# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00077-CV

**Phil Wilson, in his official capacity as general manager of the Lower Colorado River Authority; and Timothy Timmerman; Thomas Michael Martine; J. Scott Arbuckle; Steve K. Balas; Lori A. Berger; Joseph M. Crane; Pamela Jo Ellison; John M. Franklin; Raymond A. Gill, Jr.; Charles B. Johnson; Sandra Wright Kibby; Robert Lewis; George W. Russell; Franklin Scott Spears, Jr.; and Martha Leigh M. Whitten; in their official capacities as members of the board of directors of the Lower Colorado River Authority, Appellants**

**v.**

**New Braunfels Utilities, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. C2015-1358B, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The general manager and members of the board of directors of the Lower Colorado River Authority (LCRA Officials) appeal the trial court's order denying their plea to the jurisdiction based on governmental immunity that challenged New Braunfels Utilities's (NBU) pleadings. Because we conclude that NBU's pleadings affirmatively demonstrate the trial court's jurisdiction, we affirm the trial court's order.

## BACKGROUND

In September 2015, NBU filed suit against LCRA and the LCRA Officials concerning certain water rights on the Comal River, seeking: (1) judgment for title and possession of the water

rights, (2) judgment quieting title to the water rights in NBU in accordance with a certificate of adjudication issued by the Texas Water Commission (TWC), (3) declarations that NBU "obtained full, complete, and unconditional title" to the water rights, (4) declarations that LCRA did not hold a "reverter interest nor any other interest" in the water rights, and (5) an award of attorney's fees, expenses, and costs. In its pleadings, NBU referred to all of the defendants collectively as "LCRA," its claims as "title-based claims under Texas law regarding property located in Texas," and its lawsuit as involving "title and ownership of water rights." NBU claimed that it held "record and equitable title to the water rights originally held under Certified Filing No. 135," that it was the "sole owner of the water rights," that LCRA wrongfully claimed an ownership interest in the water rights, that NBU was asserting a trespass to try title claim with respect to the water rights, and that LCRA had "clouded NBU's title to its water rights."

As support for its claims, NBU pleaded the following facts.

10. Prior to February 1978, the LCRA held certain water rights on the Comal River in Comal County registered with the Texas Water Commission.

11. On February 6, 1978, the LCRA sold, released, and forever quitclaimed unto NBU all of its right, title, and interest in and registered with the Texas Water Commission under Certified Filing No. 135. According to the Quitclaim executed by the LCRA, "neither the [LCRA], nor its successors or assigns, shall at any time hereafter have, claim or demand any right or title to the aforesaid water rights, privileges or appurtenances, nor any part thereof." A copy of the February 6, 1978 Quitclaim is attached as **Exhibit 1**.

12. On the same day, NBU and the LCRA signed a Memorandum of Agreement (the "MOA"), under which the Quitclaim was "conditioned upon the effectuation of a lease and/or purchase of the LCRA properties described herein by [NBU] within a period of ONE HUNDRED EIGHTY (180) days

2

from the date hereof." In the event the lease or purchase was not timely effectuated, NBU agreed to "without demand, reconvey said water rights to LCRA."

13. One hundred sixty-four days later, on July 20, 1978, NBU and the LCRA entered into a lease agreement (the 1978 Lease) with respect to the real property described in the MOA (containing the Comal Generating Plant and Switchyard). Thus, because the 1978 Lease was executed within 180 days of the MOA between the parties, under the terms of the MOA, NBU had no further obligation to reconvey water rights to the LCRA, and the February 1978 Quitclaim transfer was confirmed as absolute.

14. Section XI of the 1978 Lease stated that the LCRA also transferred and assigned to NBU, as an appurtenance to the leased premises, "[a]ll rights held by LCRA under Certified Filing No. 135," and that "[u]pon the termination of this lease, the foregoing water rights shall revert to LCRA, at the option of LCRA." However, because the Quitclaim resulted in an absolute transfer to NBU of all rights held by the LCRA under Certified Filing No. 135, there was no right that, as of the date of the 1978 Lease, was "held by LCRA under Certified Filing No. 135" that was subject to the transfer and assignment language of the 1978 Lease or its purported reverter language.

15. On October 13, 1982, the [TWC] entered its final determination of all claims of water rights in the Lower Guadalupe River Segment of the Guadalupe River Basin. According to the TWC's final order, the failure to file a sworn statement in the administrative proceeding extinguished and barred any claim of water right. Under Texas Water Code section 11.303, "since the filing of all claims to use public water is necessary for the conservation and best utilization of the water resources of the state, failure to file a sworn statement . . . extinguishes and bars any claim of water rights to which this section applies." *See* Tex. Water Code § 11.303(j). The LCRA did not join the administrative proceeding as a party. NBU was a party to the administrative proceeding. The TWC entered a finding that NBU was "the owner of Certified Filing No. 135." The TWC further concluded that NBU was recognized certain rights under Certified Filing No. 135, and that "[n]o further rights under Certified Filing No. 135 are recognized."[1]

---

[1] *See* Tex. Water Code §§ 11.301–.341 (Water Rights Adjudication Act) (setting out administrative procedure for adjudicating water rights).

3

16. Under Texas Water Code section 11.317, the final determination of the TWC was filed in district court for a de novo review. *See id.* § 11.317(a). On May 25, 1984, the 267th Judicial District Court of Victoria County entered a final decree in Cause No. 84-2-32534C. The district court's adjudication of NBU's water rights under Certified Filing No. 135 was not appealed or otherwise challenged by the LCRA. Under Texas Water Code section 11.322, the court's decree affirming the order of the TWC was "final and conclusive as to all existing and prior rights and claims to the water rights in the adjudicated stream or segment of a stream." *See id.* § 11.322(d). The decree was also "binding on all claimants to water rights outside the adjudicated stream or segment of a stream." *See id.* A copy of the May 25, 1984 district court judgment is attached as **Exhibit 2**.

17. In accordance with the final adjudication of rights under Certified Filing No. 135, on July 16, 1985, the [TWC] issued NBU the Certificate of Adjudication No. 18-3824, which set forth NBU's water rights as had been originally held under Certified Filing No. 135, but expressly superseded all rights under Certified Filing No. 135. A copy of the July 16, 1986 Certificate of Adjudication No. 18-3824 is attached as **Exhibit 3**.

18. On February 24, 1987, NBU and the LCRA entered into a lease agreement (1987 Lease) that, by its express terms, superseded the 1978 Lease between the parties. The 1987 Lease purported to reaffirm the transfer and assignment of certain water rights and the reverter clause pertaining to those water rights. However, again, the identified water rights were limited to only those "rights held by LCRA under Certified Filing No. 135." As of February 1987, the LCRA held no water rights under Certified Filing No. 135. The rights under Certified Filing No. 135 had been unconditionally transferred to NBU in February 1978, a final judgment had been entered by the Victoria County District Court in May 1984 to the effect that any and all water rights under Certified Filing No. 135 were held by NBU alone, and Certificate of Adjudication No. 18-3824 was granted by the TWC in July 1985 superseding NBU's rights originally held under Certified Filing No. 135. The 1987 Lease—which superseded and stood in the place of the 1978 Lease—did not convey to the LCRA any of NBU's rights under Certificate of Adjudication No. 18-3824.

19. Consistent with its ownership rights, on February 27, 1997, NBU transferred and conveyed to the City by Water Rights Deed recorded as Document #9906000435, Official Public Records of Comal County, Texas, the irrigation portion of Certificate of Adjudication [No.] 18-3824A which authorizes the use and diversion of 200 acre feet of water per annum. These

4

water rights transferred to the City are part of the water rights which LCRA transferred and assigned to NBU pursuant to the 1978 Quitclaim.

20. Consistent with its ownership rights, NBU sought and received approval from the Texas Natural Resource Conservation Commission on December 9, 2002, an amendment to Certificate of Adjudication [No.] 18-3824 authorizing NBU to divert and use not to exceed 5658 acre feet of water per annum from a point on the Guadalupe River at NBU's water treatment plant for municipal, industrial, agricultural and recreational purposes. These water rights subject of this 2002 amendment to Certificate of Adjudication [No.] 18-3824 are part of the water rights which LCRA transferred and assigned to NBU pursuant to the 1978 Quitclaim.

21. In 2014, decades after LCRA's absolute transfer, the LCRA informed NBU that it claims a reverter interest in the water rights under Certified Filing No. 135 based on the language of the 1978 and 1987 Leases between the parties, contrary to the plain language of the 1978 Quitclaim, contrary to the final judgment of the Victoria County district court adjudicating NBU's full and complete title to those water rights, and contrary to the terms of Certificate of Adjudication No. 18-3824.

As noted in the recited pleadings, NBU attached copies of the quitclaim assignment, the Victoria County final judgment, and TWC's Certificate of Adjudication No. 18-3824 to its original petition.

Shortly after NBU filed suit, it also filed a motion for summary judgment to quiet title and submitted evidence to support its motion including documents attached to its original petition as well as other documents.[2]  The LCRA Officials filed a response to the motion for summary

---

[2] Although not specifically referred to in its original petition, NBU cited and attached a letter dated August 10, 2015, to its motion for summary judgment. The letter was sent by appellant Phil Wilson, the general manager of LCRA, to a chief clerk of the Texas Commission on Environmental Quality. In the letter, Wilson requested a contested case hearing on a water permit application by NBU and stated that LCRA has a "personal justiciable interest" in the application because "LCRA has an ownership interest in the surface water right that is part of the application filed by [NBU]." Wilson referred to the long term lease as the source of LCRA's "right to require NBU to transfer to LCRA the water rights that are reflected in Certificate of Adjudication No. 18-3824, as amended." He also stated that the application may "adversely impact LCRA's

5

judgment and a plea to the jurisdiction. In their plea, the LCRA Officials challenged NBU's pleadings based on governmental immunity. They asserted that NBU "has not even attempted to allege either that any of the Individual Defendants have acted outside of their legal authority or that any of them have failed to perform a purely ministerial task" to support the trial court's jurisdiction. The LCRA Officials further asserted that "NBU has no reasonable basis for prospective relief because the Lease has not terminated, and even if it had, the LCRA would need to exercise the discretionary option to reclaim the water rights in question, in accordance with the provisions of the Lease to which NBU agreed" and that "NBU also cannot maintain a cause of action for retrospective relief in the form of revoking the previously granted right of LCRA to claim a reverter in the event the Lease is terminated." NBU then filed a response to the plea to the jurisdiction and a reply to the LCRA Officials' response to NBU's motion for summary judgment.

Following a hearing on NBU's motion for summary judgment and the LCRA Officials' plea to the jurisdiction, the trial court denied the LCRA Officials' plea and granted NBU's motion for summary judgment.[3] The LCRA Officials then brought this interlocutory appeal from the denial of their plea. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## GOVERNING LAW AND STANDARD OF REVIEW

We review a ruling on a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

interests in the water rights."

[3] At the same hearing, the trial court also considered LCRA's plea to the jurisdiction. The trial court granted LCRA's plea, and NBU has not appealed that ruling. LCRA, therefore, is not a party to this appeal.

"When a plea to the jurisdiction challenges the pleadings," as is the case here, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* To make this determination, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the pleading's factual allegations as true. *Id.*; *see Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502–03 (Tex. 2010) ("It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction."). Although a plaintiff has the burden to plead facts showing jurisdiction, she is not "required to marshal evidence and prove her claim to satisfy this jurisdictional hurdle." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012).

Governmental immunity from suit deprives a court of subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Miranda*, 133 S.W.3d at 226–27. Governmental immunity, however, does not bar *ultra vires* claims against governmental officials acting in their official capacities to determine disputes concerning title or possession of property. *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 393–94 (Tex. 2011) (holding that trust was entitled to replead to assert *ultra vires* claim against State officials to determine whether State had ownership interest in riverbed based on navigability of river crossing trust's property); *State v. Lain*, 349 S.W.2d 579, 582, 586 (Tex. 1961) (concluding that legislative consent to sue was not prerequisite to maintenance of action in trespass to try title against governmental officials where governmental officials asserted rights to use submerged land for operation of ferry and finding that "plaintiffs' title to the land in controversy [was] not servient to the public rights which the defendants assert").

7

In *State v. Lain*, the Texas Supreme Court set out the procedure for trial courts to follow when a governmental official asserts immunity in response to a title-based claim:

> [W]hen officials of the state are the only defendants, or the only remaining defendants, and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in. If the plaintiff fails to establish his title and right of possession, a take nothing judgment should be entered against him as in other trespass to try title cases. If the evidence establishes superior title and right of possession in the sovereign, the officials are rightfully in possession of the sovereign's land as agents of the sovereign and their plea to the jurisdiction based on sovereign immunity should be sustained. If, on the other hand, the evidence establishes superior title and right of possession in the plaintiff, possession by officials of the sovereign is wrongful and the plaintiff is entitled to relief. In that event the plea to the jurisdiction based on sovereign immunity should be overruled and appropriate relief should be awarded against those in possession.

349 S.W.2d at 582. Under this procedure, the court instructed trial courts not to grant a plea to the jurisdiction at the pleadings stage if the alleged claims against governmental officials are title-based. *See id.* In that case, the plaintiffs brought suit against state officials asserting a trespass-to-try-title claim and seeking to enjoin the asserted trespass after the state officials constructed a ferry landing and "dredged a channel over the [plaintiffs'] property for operation of a ferry." *Id.* at 580. The state officials did not question the plaintiffs' title to the submerged land but argued that the plaintiffs' title was qualified, "subject to certain rights of the public and burdened with a servitude in favor of the public" and "subject to the right of the public to use the premises for navigation and other reasonable purposes." *Id*. at 581–82. The Texas Supreme Court affirmed the denial of the state officials' plea to the jurisdiction based on immunity, reasoning:

8

> One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for and on behalf of the state.

*Id.* at 581. Citing federal and Texas cases, the court explained the rationale for this rule allowing suit against state officials in this context —"possession is not in fact held for the sovereign but it [is] wrongfully held." *Id.*

In *Texas Parks and Wildlife Department v. Sawyer Trust*, the Texas Supreme Court reaffirmed and applied the procedure set out in *Lain*. 354 S.W.3d at 394. In that case, the trust filed a declaratory judgment action to determine whether a river crossing its property was a navigable stream because the trust wanted to sell sand and gravel from the riverbed. *Id.* at 389. The trust "sought a declaratory judgment that no navigable stream [was] present on its property, despite the Department's contention to the contrary, and injunctive relief precluding the Department from entering the trust's property in an attempt to limit, control, or interfere with the removal of sand and gravel from the trust's property." *Id.* Noting that the State "owns the soil underlying navigable streams, *id.* at 386–87 (citing Tex. Parks & Wild. Code § 1.011(c); Tex. Water Code § 11.021),[4] the court looked to the "real substance" of the trust's claims in its pleadings and determined that it concerned "rival claims to ownership of the entire streambed," which "in substance [was] one to

---

[4] Section 1.011(c) of the Texas Parks and Wildlife Code defines state property to include: "the beds and bottoms and the products of the beds and bottoms of the public rivers, bayous, lagoons, creeks, lakes, bays, and inlets in this state." Tex. Parks & Wild. Code § 1.011(c). Section 11.021 of the Water Code defines state water to include "water of the ordinary flow, underflow, and tides of every flowing river, natural stream, and lake." Tex. Water Code § 11.021(a).

9

determine title to land." *Id.* at 389–90. Applying the procedure set out in *Lain*, the court concluded that the trust could proceed on these claims—which the court characterized as *ultra vires* claims—against the governmental officials acting in their official capacities. *Id.* at 393–94. The court explained: "A suit to recover possession of property unlawfully claimed by a state official is essentially a suit to compel a state official to act within the officer's statutory or constitutional authority, and the remedy of compelling return of the land illegally held is prospective in nature." *Id.* at 393; *see also Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W3d 154, 158 & n.1 (Tex. 2016) (describing *ultra vires* claims against governmental officials); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (same).

Guided by the procedure as set out in *Lain* and reaffirmed in *Sawyer Trust* and the standard of review, we turn to the LCRA Officials' issues challenging NBU's pleadings. *See id.*; *see also Miranda*, 133 S.W.3d at 226.

## ANALYSIS

In two issues, the LCRA Officials contend that: (i) they are entitled to governmental immunity against NBU's claims because the "essence" of its claims is "to extinguish a valuable contract right belonging to LCRA," and (ii) this Court should not expand the "narrow exception to immunity allowing suits against governmental officials to resolve title disputes, when the LCRA Officials assert no claim to title or possession of property in this contract dispute."

**"Essence" of NBU's Claims**

In their first issue, the LCRA Officials characterize NBU's claims as contractual, asserting that the crux of NBU's claims is to challenge the validity of LCRA's reversionary interest in the water rights "under the contracts entered into by LCRA and NBU" and that they are immune from contract-based claims.[5] They argue that NBU is trying to circumvent the LCRA Officials' immunity from this suit to deprive LCRA of a "valuable contract right," and they cite cases in which courts have precluded private parties from circumventing the State's sovereign immunity from suit by characterizing a contract dispute as some other claim, such as a claim for declaratory judgment. *See, e.g.*, *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim."); *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001) (concluding "that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature"). In contrast with those types of cases, however, the dispositive question here is whether NBU has pleaded a valid *ultra vires*, title-based claim under *Lain* and *Sawyer Trust*. Thus, we do not find those cases controlling.

We also note that alleged property interests contained in deeds, contracts, or leases often form the basis of title-based claims. *See, e.g.*, *Lindig v. Pleasant Hill Rocky Cmty. Club*, No. 03-15-00051-CV, 2015 Tex. App. LEXIS 9092, at *5–6, 12 (Tex. App.—Austin Aug. 28, 2015,

---

[5] LCRA's alleged reversionary interest is based on the following lease provision concerning the water rights at issue: "Upon the termination of this lease, the foregoing water rights shall revert to LCRA, at the option of LCRA."

11

pet. denied) (mem. op.) (discussing reversionary interests and construing reverter clause in deed in context of trespass to try title claim); *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 552–55 (Tex. App.—San Antonio 2011, no pet.) (construing oil and gas lease to determine title question as to mineral interests); *Ruiz v. Stewart Mineral Corp.*, 202 S.W.3d 242, 247–49 (Tex. App.—Tyler 2006, pet. denied) (construing deed in context of request for declaratory relief and trespass to try title claim).

NBU's pleaded claims include a suit to quiet title to the water rights at issue. NBU alleged that it held "record and equitable title to the water rights originally held under Certified Filing No. 135," that it was the "sole owner of the water rights," that the LCRA Officials wrongfully claimed an ownership interest in the water rights, and that the LCRA Officials had "clouded NBU's title to its water rights." *See Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied) ("The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable."); *see Florey v. Estate of McConnell*, 212 S.W.3d 439, 449 (Tex. App.—Austin 2006, pet. denied) ("A suit to quiet title is equitable in nature and the principal issue in such suits is 'the existence of a cloud on the title that equity will remove.' The suit to quiet title 'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)). NBU also sought declarations that: (i) NBU "obtained full, complete, and unconditional title to the water rights under Certified Filing No. 135" as a result of the quitclaim assignment, the Victoria County final judgment,

12

and the TWC's Certificate of Adjudication No. 18-3824; and (ii) LCRA did not have a "reverter interest nor any other interest in the water rights under Certified Filing No. 135 or Certificate of Adjudication No. 18-3824 or its amendments." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a); *Sawyer Trust*, 354 S.W.3d at 388 (recognizing that although UDJA does not alter trial court's jurisdiction or underlying nature of claim, it is procedural device for deciding cases already within court's jurisdiction). And NBU attached copies of the quitclaim assignment, the Victoria County final judgment, and TWC's Certificate of Adjudication to its original petition. *See* Tex. R. Civ. P. 59 (allowing "written instruments, constituting, in whole or in part, the claim sued on" to "be made a part of the pleadings" by attaching copy to pleadings).

The LCRA Officials do not dispute that the water rights at issue are property interests. *See, e.g.*, Tex. Water Code § 11.040(a) ("A permanent water right is an easement and passes with the title to land."); *Clark v. Briscoe Irrigation Co.*, 200 S.W.2d 674, 679 (Tex. Civ. App.—Austin 1947, no writ) ("[A] water right, when acquired and perfected . . . , constitutes a vested interest in or title to the use of the water thereby appropriated."). The LCRA Officials also do not dispute that they claim an interest in the water rights—although they characterize this interest as a "contractual right to reclaim water rights" at the expiration of the lease—and NBU has alleged in its pleadings that the LCRA Officials' claim to the water rights is affecting and is a cloud on NBU's title to the water.[6] *See Perrien*, 390 S.W.3d at 61 (listing elements of quiet title claim); *see also Roberts*

---

[6] In their briefing, the LCRA Officials state that the disputed lease provision "creates a reversionary interest" and characterize LCRA's claim to the water rights as a "reverter option" that "is similar to a possibility of reverter common in an oil and gas lease, in which a lessor of the mineral estate retains a non-possessory interest in the minerals."

13

*v. Wilson*, 394 S.W.3d 45, 47–48 (Tex. App.—El Paso 2012, no pet.) (allowing challenge to party's assertion of interest based on reverter clause in will to be brought as quiet title claim); *Chambers v. Huggins*, 709 S.W.2d 219, 221–22 (Tex. App.—Houston [14th Dist.] 1986, no writ) (allowing challenge to party's assertion of reversionary interest in mineral estate to be brought as UDJA claim).

Accepting NBU's factual allegations in its pleadings as true and construing its pleadings liberally in favor of jurisdiction, we conclude that NBU has asserted title-based claims in its pleadings against the LCRA Officials. *See Sawyer Trust*, 354 S.W.3d at 393–94; *Lain*, 349 S.W.2d at 580; *Miranda*, 133 S.W.3d at 226. Thus, we overrule the LCRA Officials' first issue.

**Scope of *Sawyer Trust* and *Lain***

In their second issue, the LCRA Officials argue that the exception to governmental immunity that is addressed in *Sawyer Trust* and *Lain* does not apply here and should not be expanded to do so because the exception is limited to trespass-to-try-title claims and NBU cannot proceed on a trespass-to-try-title claim because LCRA's "contractual reversionary interest" in the water rights is non-possessory. *See Richmond v. Wells*, 395 S.W.3d 262, 266–67 (Tex. App.—Eastland 2012, no pet.) (noting that "possibility of reverter" in oil and gas lease was non-possessory interest and that generally "non-possessory interests are not proper subjects of a trespass-to-try-title action"); *Roberson v. City of Austin*, 157 S.W.3d 130, 136 (Tex. App.—Austin 2005, pet. denied) (observing that "we generally have not applied the remedy of trespass to try title to nonpossessory property interests such as easements"); *see also* Tex. Prop. Code § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *Florey*, 212 S.W.3d at 448–49 (discussing difference between statutory trespass-to-try-title claim and suit to quiet title).

14

They argue that LCRA and its officials do not "possess any property that NBU claims title to or that could be ordered returned to NBU" because NBU has possession and title to the water rights at issue until the lease expires in 2037 and that there may never be a dispute about title or possession of the water rights because LCRA "may elect not to exercise its option for a reversion of the water rights in 2037."

The Texas Supreme Court, however, in *Sawyer Trust* concluded that, while the facts before it did not constitute a constitutional taking, they "constitute[d] 'possession' of the streambed by the State for the purposes of *Lain*." 354 S.W.3d at 394. In that case, at the time the trust filed suit, a state surveyor had determined that the river was "navigable," but the State had not taken affirmative action to preclude the removal of sand and gravel from the riverbed. *Id*. at 393–94. In that context, the court looked to the substance of the trust's claim for declaratory relief to conclude that the trust could proceed, recognizing that, to hold otherwise, the trust as the landowner "seemingly [would have] little recourse." *See id*. The court rejected the State's suggestion that "the trust could take materials from the streambed and if the State sought civil damages or filed criminal charges, then the State would have to prove it owned the materials in the streambed by proving the [river] is navigable" and concluded that a "landowner should not be put in such an untenable position if it can be avoided." *Id.*

The Texas Supreme Court also has made clear that reversionary interests are "interests that remain with the grantor" and that they "may be viewed 'as claims to property that the grantor never gave away.'" *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 802–03 (Tex. 2013) (citing Richard R. Powell, *Powell on Real Property* § 20.01–.02 (2000)); *see id.* at

803–04 (observing that "possibility of reverter" was future interest in real property that was "vested compensable property interest"); *see Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991) ("A possibility of reverter is the interest left in a grantor after the grant of a fee simple determinable."); *Bagby v. Bredthauer*, 627 S.W.2d 190, 196–97 (Tex. App.—Austin 1981, no writ) ("Once a reversion, possibility of reverter or right of entry is created, that interest is 'vested' in interest at the time of its creation."); *Black's Law Dictionary* 855 (9th ed. 2009) (defining "future interest" as "a property interest in which the privilege of possession or other enjoyment is future and not present"). Thus, the LCRA Officials' claimed interest in the water rights based on the contractual reverter provision is an alleged property interest that LCRA "never gave away." *See El Dorado*, 395 S.W.3d at 802–03.

In its pleadings, NBU asserts that the LCRA Officials wrongfully claim this property interest and alleges facts in support of this assertion based in part on the documents attached to its original petition—the quitclaim assignment, the Victoria County final judgment, and TWC's Certificate of Adjudication. *See* Tex. R. Civ. P. 59. Construing the pleadings liberally and in favor of jurisdiction, we conclude that NBU's alleged facts "constitute 'possession'" by LCRA of an alleged present ownership interest for the purposes of analysis as set forth in *Sawyer Trust* and *Lain*. *See Sawyer Trust*, 354 S.W.3d at 394; *Miranda*, 133 S.W.3d at 226. Thus, we conclude that the procedure in *Sawyer Trust* and *Lain* applies, and, applying that procedure, we conclude that NBU has alleged facts that affirmatively demonstrate the court's jurisdiction to hear its title-based claims against the LCRA Officials. It follows that the trial court did not err in denying the LCRA Officials' plea to the jurisdiction that was limited to a challenge to NBU's pleadings. *See Sawyer Trust*,

16

354 S.W.3d at 394 (observing that government's claim of property right based on stream's navigability was not conclusive and that question of title was "judicial one"); *Lain*, 349 S.W.2d at 582 (noting that when "officials of the state are the only defendants, or the only remaining defendants, and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in"); *Parker v. Hunegnaw*, 364 S.W.3d 398, 400, 405–07, 410 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (discussing *Sawyer Trust* and *Lain* in context of suit to "'quiet title' regarding certain real property" that was based on allegations that mayor of Houston wrongfully possessed owner's property and concluding that "at this juncture, because [appellant, the mayor of Houston in her official capacity] has challenged only the pleadings, which affirmatively demonstrate jurisdiction, the trial court did not err by denying the plea"). On this basis, we overrule the LCRA Officials' second issue.

## CONCLUSION

Having overruled the LCRA Officials' issues, we affirm the trial court's order denying their plea to the jurisdiction.[7]

---

[7] Also pending before this Court is NBU's motion to lift stay for purpose of entry of judgment and motion for attorney's fees and costs as sanctions. NBU sought a stay on appeal for the purpose of allowing the trial court to enter final judgment so that this Court could consider the trial court's ruling on the motion for summary judgment and the order on the plea to the jurisdiction in one appeal. We dismiss the motion to lift stay as moot and deny the motion for sanctions. The LCRA officials were statutorily authorized to appeal the interlocutory order denying their plea to jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

Further, because we have concluded that the trial court correctly denied the LCRA Officials' plea based on the reasoning and analysis in *Sawyer Trust* and *Lain*, we do not reach NBU's

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: July 22, 2016

---

alternative basis for affirming the trial court's order, based on the Texas Supreme Court's recent opinion in *Wasson Interests, Ltd. v. City of Jacksonville*, No. 14-0645, 2016 Tex. LEXIS 232 (Tex. Apr. 1, 2016). *See* Tex. R. App. P. 47.1.