# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 11-0834
═══════════════

EL DORADO LAND COMPANY, L.P., PETITIONER,

v.

CITY OF MCKINNEY, RESPONDENT

══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
══════════════════════════════════════════════════════════

**Argued January 9, 2013**

JUSTICE DEVINE delivered the opinion of the Court.

The issue in this inverse condemnation lawsuit is whether a reversionary interest, consisting of the grantor's right to purchase real property on the occurrence of a future event, is a sufficient property interest to support an inverse condemnation claim. The trial court concluded it was not and dismissed the case. The court of appeals affirmed the trial court's judgment, holding that the grantor's retained right was not a compensable property interest under the Takings Clause of the Texas Constitution. 349 S.W.3d 215, 216, 218 (Tex. App.—Dallas 2011) (citing TEX. CONST. art I, § 17). Because we conclude that the reversionary interest here is a compensable property interest, we reverse and remand to the trial court.

I

In 1999, El Dorado Land Company sold several acres of land to the City of McKinney for use as a park. El Dorado's special warranty deed provided that the conveyance was "subject to the requirement and restriction that the property shall be used only as a Community Park." If the City decided not to use the property for that purpose, the deed further granted El Dorado the right to purchase the property. The deed labeled this right an option and set the option's price at the amount the City paid or the property's current market value, whichever was less. El Dorado also had the right to inspect the property and to close on the purchase within ninety days after inspection.

Ten years after acquiring the property, the City built a public library on part of the land. The City did not offer to sell the property to El Dorado or otherwise give notice before building the library. After learning about the library, El Dorado notified the City by letter that it intended to exercise its option to purchase. El Dorado's letter further asked the City within ten days to acknowledge its obligations under the deed and to suggest an acceptable closing date.

After the City failed to acknowledge El Dorado's rights under the deed, El Dorado sued for inverse condemnation. The City responded with a plea to the jurisdiction. In its plea, the City argued that El Dorado's claim did not involve a compensable taking of property but a mere breach of contract for which the City's governmental immunity had not been waived. The trial court agreed, sustaining the City's plea and dismissing El Dorado's lawsuit. The court of appeals similarly agreed and affirmed the trial court's judgment. 349 S.W.3d 216.

II

The dispute here continues over the nature of El Dorado's interest in this land. El Dorado argues that its right to purchase this property is a real property interest, in the nature of a reversionary interest, and more particularly described as a right of reentry. The City, on the other hand, contends that El Dorado's option is not a real property interest but a mere contract right. As such, the City argues that the option is unenforceable against it absent an express waiver of the City's governmental immunity.[1] Because the Legislature has not chosen to waive governmental immunity for this particular type of contract claim,[2] the City concludes that the court of appeals correctly affirmed the dismissal of El Dorado's claim.

The court of appeals similarly reasoned that the deed restriction and option were merely contract rights that were not compensable against a governmental entity under the Texas Constitution. *See* 349 S.W.3d at 218 (observing that inverse condemnation claims have "traditionally involved interests in real property and not the alleged taking of property interests created under contract"). The court accordingly "reject[ed] El Dorado's argument that, pursuant to the deed provision, it held a reversionary interest or the 'possibility of reverter' in the property." *Id*.

---

[1] *See, e.g.*, *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001) (noting "that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature").

[2] The Legislature has waived a municipality's immunity to suit for contract claims involving goods and services. TEX. LOC. GOV'T CODE §§ 271.151(2), (3)(A), 271.152.

3

While we agree that the deed did not create a possibility of reverter, we disagree that El Dorado did not retain another type of reversionary interest in the property.

El Dorado refers to its reversionary interest as a right of reentry. A right of reentry is a "future interest created in the transferor that [may] become possessory upon the termination of a fee simple subject to a condition subsequent." RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 25.2 cmt. b (hereafter RESTATEMENT (THIRD) OF PROPERTY); *see also Davis v. Vidal*, 151 S.W. 290, 292–93 (Tex. 1912) (describing a right of reentry as "a contingent reversionary interest in the premises resulting from the conveyance of an estate upon a condition subsequent where there has been an infraction of such condition").

Under the deed, El Dorado's possessory interest was contingent on the property's use. If the City violated the deed restriction, El Dorado retained the power to terminate the City's estate.[3] The deed referred to this power or right as an option, but it effectively functioned as a power of termination, or as El Dorado labels it, a right of reentry. El Dorado's deed conveyed a defeasible estate ("a fee simple subject to a condition subsequent")[4] to the City with El Dorado retaining a conditional future interest—the power to terminate the City's defeasible estate on the occurrence of

---

[3] This power, referred to in the deed as the option to purchase, is also known at common law by other names, such as a right of entry for condition broken, a right of reentry for breach of condition subsequent, or a power of termination. *See* 3 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 20.01[1] (2000) ("The term 'power of termination' is used by the Restatement and by some courts, but most courts and most lawyers employ the term 'right of entry for condition broken.'"); *see also* 34 TEX. JUR. 3D *Estates* § 8 at 546 (2010) (noting that "a future interest" may be "characterized as a right of reentry for breach of condition subsequent or, in other words, an estate subject to a power of termination").

[4] RESTATEMENT (THIRD) OF PROPERTY § 25.2 cmt. b.

a condition subsequent.[5]  We have previously equated this right to an estate or interest in land.

*Davis*, 151 S.W. at 293; *see also* RESTATEMENT OF PROPERTY § 153(1)(a) & cmt. a (noting that the

term future interest includes an interest in land which "may become a present interest" and is

"sufficiently broad to include . . . powers of termination").

Contrary to the court of appeals, we conclude that El Dorado retained a reversionary interest

in the property.  We likewise disagree with the court of appeals' analysis of El Dorado's claim as a

contract right dependent on a statutory waiver of the City's governmental immunity.  A statutory

waiver of immunity is unnecessary for a takings claim because the Texas Constitution waives

"governmental immunity for the taking, damaging or destruction of property for public use." *Steele*

*v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980).

El Dorado's claim is that the City took or destroyed its reversionary interest in the property

by refusing either to convey the property or to condemn El Dorado's interest.  The issue then is

whether El Dorado's reversionary interest can support a takings claim under the Texas Constitution.

TEX. CONST. art. I § 17.  El Dorado submits that it can under our decision in *Leeco Gas & Oil Co.*

*v. Nueces County*, 736 S.W.2d 629 (Tex. 1987).

III

*Leeco*, like this case, involved a restricted  conveyance of land to a governmental entity that

later sought to avoid the deed restriction.  The land in that case was donated to Nueces County for

---

[5] *See* RESTATEMENT OF PROPERTY § 155 (defining a power of termination as "the future interest created in the transferor . . . by a transfer of either an estate in land or an analogous interest in a thing other than land, subject to a condition subsequent").

use as a park, and the deed included a restrictive covenant requiring that use. *Leeco*, 736 S.W.2d at 630. The grantor retained a reversionary interest, described as a possibility of reverter,[6] in the event the land was not used as a park. *Id*.

Nueces County subsequently decided to use the land for another purpose and sought to condemn the grantor's reversionary interest. Although the land was worth millions of dollars, the trial court awarded only nominal damages for the grantor's reversionary interest, and the court of appeals affirmed that award. *Id.* We reversed and remanded, concluding that the grantor's reversionary interest was worth more than nominal damages. *Id.* at 631–32.

Relying on the Restatement of Property, we observed that a possibility of reverter was a protected property interest, the value of which depended upon the imminence of possession. *Id.* We explained that a nominal valuation would be appropriate for the government taking such property only "when the event upon which the possessory estate in fee simple defeasible is to end is not probable within a reasonably short period of time." *Id.* at 631. Conversely, we explained that nominal damages would be inappropriate if the defeasible event was reasonably certain to occur in the near future or had already occurred. *Id.* Under those circumstances, we said the compensable value of the reversionary interest should be measured by the amount "the value of the unrestricted fee exceeds the value of the restricted fee." *Id.* at 631–32. *Leeco* thus recognizes that a future interest in real property is compensable under the Takings Clause, TEX. CONST. art. I, § 17, and that

---

[6] A possibility of reverter is a term of art for a future interest retained by a grantor that conveys a determinable fee; "it is the grantor's right to fee ownership in the real property reverting to him if the condition terminating the determinable fee occurs." *Luckel v. White*, 819 S.W.2d 459, 464 (Tex. 1991).

the owner of such an interest is entitled to a condemnation award. *Id.* at 631 (citing RESTATEMENT OF PROPERTY § 53).

The court of appeals' opinion does not directly address *Leeco*, but arguably attempts to distinguish the decision by observing that the deed in this case did not include a possibility of reverter. 349 S.W.3d at 218. While we agree it did not, as previously explained, we do not accept the court's further conclusion that El Dorado's deed did not create a reversionary interest. *See id.* (rejecting El Dorado's argument that "it held a reversionary interest or the 'possibility of reverter' in the property"). As El Dorado argues, the deed restriction and option created in El Dorado a right of reentry, which is a reversionary interest, albeit of a different type than the possibility of reverter reserved in *Leeco*.

The City argues that *Leeco* is distinguishable on this ground because a possibility of reverter is materially different from the right or option reserved by El Dorado. At oral argument, the City elaborated on the distinction, explaining that Leeco's reversionary interest was different because it was self-executing, whereas the right retained by El Dorado was not. While we agree that Leeco's possibility of reverter and El Dorado's right of reentry are different types of reversionary interests, it is not apparent why their technical differences make one a compensable property interest and the other a worthless right. In both, the termination of the possessory estate rests on the occurrence of a condition subsequent imposed upon the conveyance. That a right of reentry requires its holder to make an election does not make it any less a property right, particularly where as here the holder has made the required election.

7

Historically, the law divided future interests into five types: (1) remainders, (2) executory interests, (3) reversions, (4) possibilities of reverter, and (5) rights of entry. RESTATEMENT (THIRD) OF PROPERTY § 25.2 cmt. a. Remainders and executory interests are future interests created in persons other than the grantor. 3 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 20.01[2] (2000). Reversions, possibilities of reverter, and rights of entry are interests that remain with the grantor. *Id*.; *see also* RESTATEMENT (THIRD) OF PROPERTY § 25.2 cmt. b (noting their classification "as reversionary future interests, because they were retained by the transferor"). Collectively, the types of future interests that remain with the grantor are reversionary interests[7] and may be viewed "as claims to property that the grantor never gave away." POWELL ON REAL PROPERTY § 20.02[1].

The latest Restatement dispenses with the historical parsing of future interests, recognizing only reversions and remainders. RESTATEMENT (THIRD) OF PROPERTY § 25.2. It thus abandons distinctions that previously differentiated a possibility of reverter from a right of entry because, in its view, no legal consequences attach to such distinctions. *See id*. § 25.2 cmt. a ("Today, no legal consequences depend upon placing a future interest in one category or another.").

We likewise see no reason to distinguish between the reversionary interest in *Leeco* and the one in this case. Under Texas law, the possibility of reverter and the right of reentry are both freely

---

[7] The distinctions between reversionary interests rest largely on the form of the conveyance. Thus, a "reversion" is "a future interest retained by the transferor that could become possessory upon the termination of a life estate or a term of years"; a "possibility of reverter" is "a future interest retained by the transferor that could become possessory upon the termination of a fee simple determinable"; and a "right of entry" is "a future interest created in the transferor that could become posessory upon the termination of a fee simple subject to a condition subsequent." RESTATEMENT (THIRD) OF PROPERTY § 25.2 cmt. b.

8

assignable like other property interests. *James v. Dalhart Consol. Indep. Sch. Dist.*, 254 S.W.2d 826, 829 (Tex. Civ. App.—Amarillo 1952, writ ref'd). And, although the earlier Restatement individually identified automatic reversions and other interests, like El Dorado's power of termination or right of reentry, it nevertheless grouped them as reversionary interests. *See* RESTATEMENT OF PROPERTY § 153 cmt. a. Simply put, both the possiblity of reverter and the right of reentry are future interests in real property. *See* LEWIS M. SIMES & ALLAN F. SMITH, THE LAW OF FUTURE INTERESTS § 1 (2d ed. 1956) (defining a future interest as "an interest in land or other things in which the privilege of possession or of enjoyment is future and not present"). And *Leeco* recognizes that a future interest in real property is compensable under the Takings Clause. 736 S.W.2d at 631–32 (citing RESTATEMENT OF PROPERTY § 53). We accordingly reject the City's argument that *Leeco* is distinguishable merely because it involved a different type of reversionary interest.

The City next argues that *Leeco* is distinguishable because of public policy concerns unique to that case. The park land in *Leeco* was donated to the county, whereas the land in this case was sold, at least in part, to the City for use as a park.[8] In *Leeco*, we lamented about the unfairness of permitting the government to avoid the restrictions attached to a gift by paying nominal damages and suggested in passing that the failure to recognize Leeco's reversionary interest as a compensable property interest under the Takings Clause might adversely affect future donations. *Leeco*, 736 S.W.2d at 631. The City submits that this public policy concern is not implicated here because it

---

[8] A city ordinance applicable to El Dorado's residential development required it to donate about fifteen acres for park purposes. In negotiations with El Dorado, the City was able to purchase an adjoining seventeen acre tract. Both tracts were included in a single deed to the City.

paid El Dorado for the land. In the final analysis, however, the viability of the takings claim in *Leeco* did not turn on the donor's benevolence but, instead, on the reservation the donor included in the deed. The Restatement makes no distinction between gifts and sales, and it is not apparent why the compensable nature of a future interest should rest on donative intent rather than the donor's intent to retain a contingent future interest in the property conveyed.

Finally, the City argues that *Leeco* is procedurally distinguishable because the county initiated the condemnation proceedings, whereas in this case El Dorado commenced an inverse condemnation case. The City suggests that we merely assumed that Leeco's reversionary interest was compensable because no one disputed it. But had we not viewed Leeco's future interest as a vested compensable property interest, there would have been no point to our taking the case. We would have simply let the award of nominal damages stand. Moreover, the procedural distinctions between condemnation and inverse condemnation cases are generally immaterial. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 567 (Tex. 2012) (noting that although the actions differ based on who initiates, rules of evidence and measure of damages to property are "substantially similar" in both kinds of cases).

When private property is taken for a public purpose, our constitution requires that the government compensate the owner. TEX. CONST. art I, § 17. A condemnation proceeding is the formal process by which that compensation is determined. But when the government takes private property without paying for it, the owner must bring suit for inverse condemnation. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). The action is termed "inverse" because it is initiated by

the private property owner instead of the government, but its purpose and procedure are generally no different. *Stewart*, 361 S.W.3d at 567.

* * *

In summary, we conclude that the reversionary interest retained by El Dorado in its deed to the City is a property interest capable of being taken by condemnation. We express no opinion, however, on whether a taking has occurred in this case. We reverse and remand to the trial court for it to determine whether the City violated its deed restrictions by building a public library on a part of the land dedicated for use as a community park and, if so, to what extent the City has taken El Dorado's interest in the restricted property.

_____
John P. Devine
Justice

Opinion Delivered: March 29, 2013

11