

# NUMBER 13-18-00161-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

## IN RE ESTATE OF J.B. WELLS JR., DECEASED

**On appeal from the County Court
of Gonzales County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Perkes**

This is an accelerated appeal concerning whether the trial court had jurisdiction over appellee Austin Presbyterian Theological Seminary's (Seminary) claims against appellants, the City of Gonzalez (the City), its mayor Connie L. Kacir, and city council member Gary Schroeder. Seminary filed suit seeking to enforce its reversionary interest in property that was conditionally deeded to the City for use as a public park. Seminary alleged causes of action for inverse condemnation, trespass-to-try-title as to the individual

appellants only, and declaratory relief. The City, Kacir, and Schroeder filed a plea to the jurisdiction, which the trial court denied.

By four issues, which we construe as three, appellants argue the trial court erred in denying their plea to the jurisdiction because: (1) the inverse condemnation claim against the City is not viable because no constitutional taking occurred; (2) the trespass-to-try-title claim against the city council members is barred by the City's governmental immunity because the officials were sued in their official capacity; and (3) Seminary's request for declaratory relief is also barred by the City's governmental immunity. We affirm.

## I. BACKGROUND

In 1961, J.B. Wells Jr. conditionally bequeathed 123 acres of land "for public park purposes" to the City in his will and trust, as follows:

> (2)   I direct my trustees to grant and convey the 123 acre tract of land known as the Santa Anna tract located around my Santa Anna Mound Deer Park and bounded by Highway 183 and the right of way of the former State Highway No. 29 with the exception of a twenty-three acre triangular shaped parcel of land cut off by a partition fence in the corner of said tract nearest the Guadalupe River Bridge, the remainder of that portion of said 311 acre Santa Anna Mound tract of land on the same side of the relocated Highway No. 183, as the Santa Anna Mound and Deer Park and containing 123 acres of land, more or less, to the City of Gonzales, Texas, for public park purposes, subject to the conditions herein set out.
>
> . . . .
>
> (a)   Said land shall forever be used for the purpose of establishing, operating and maintaining a public park therein, and for such purpose only and shall never be sold.
>
> (b)   Said land and grounds shall always be known as "Wells Park" it being my wish to establish the park as a permanent memorial to my father, Jim Bailey Wells, and my mother, Josephine Henry Wells, both pioneer citizens of Gonzales County, Texas.

2

(c)     Such grant and conveyance shall reserve to my ancestors the right to create and maintain on said land, at the expense of my estate, a suitable monument or monuments to the memory of my father and mother. . . .

(d)     My camp lodge and its fenced grounds shall be maintained in good condition, and the beautiful live oak tree on the grounds and the shrubbery and trees shall be well cared for.   The building shall be maintained in good repair and shall be used as a museum for my various collections of guns, revolvers, pistols, fishing reels, fishing rods, hunting knives, etc., and many other items of like nature and shall be used for this purpose only.   These collections and items shall be kept on display there.

(e)     My Santa Anna Mound Deer Park shall be maintained in its natural condition of natural woodland and shall never be cleared of trees and shrubs.   It shall be kept clean of dead timber and necessary replacements shall be trees and shrubs native to this section of Texas.   It shall be kept as a game sanctuary for native Texas white tail deer, of which a few shall be kept in the park.

This land shall be deeded or transferred to the City of Gonzales under the provision that it may not be sold or transferred under any condition whatsoever.

. . . .

If the City of Gonzales . . . should sell all or any part of the real estate hereinabove devised to them in the final settlement of my estate, then the purchase money shall immediately revert to and become the property of the Austin Presbyterian Theological Seminary or its successor.   In the event that the City of Gonzales . . . should use income bequeathed to [it] in the final settlement of my estate for purposes other than those designated in my will, then, and in such event, such income shall immediately revert to and become the property of the Austin Presbyterian Theological Seminary or its successor until such practice is corrected.

Wells's will and trust was admitted into probate on November 25, 1963.   Subject to certain life estates, the property at issue was not conveyed to the City until August 27, 1999, when Wells's trustees executed the deed.   The deed makes continuous reference to Wells's will, adding:

It is recognized, however, that grantee, until funds are available and improvements are made the above described property cannot be used for a public park and that this will take time; and grantors herein, while expecting due diligence in converting the property hereby conveyed into a public park, will consider that there is no lack thereof if by January 1, 2002,

3

detailed plans and specifications have been drafted and approved by the City of Gonzales for conversion to park use of the property hereby conveyed, construction has been initiated and substantial progress made and the funds by grant and match are then fully available to complete the work.

The most stringent condition under which the conveyance is made is that grantee shall use the property hereby conveyed as . . . "a public park thereon, and for such purpose only and shall never be sold."
. . . .
[S]hould grantee fail to establish a park on said land within the time specified herein, or should such park be established as required by the terms of the trust and thereafter cease to be operated or maintained by grantee as such, then grantee shall be obligated, in either such event, to promptly sell all or that portion not converted to or abandoned as a park for its fair market value and pay the purchase money to Austin Presbyterian Theological Seminary.

In 2001, the Texas Parks & Wildlife Department approved the City's request for a $500,000 grant, with monies earmarked for a rodeo arena, playground, sand and volleyball courts, picnic tables, R.V. campsites, and additional amenities at the subject property. To date, there is neither a playground nor sand and volleyball courts; however, the City has built a 25,000-square-foot exposition center, 90,000-square-foot sports arena, and R.V. campground with 442 spaces on the property. The City charges the public for use of said park attractions. Seventeen acres of the 123 acres remain as an "undeveloped deer preserve." The City built a monument to Wells's parents, per Wells's request, but there is a fact question regarding whether the City maintained Wells's camp lodge as a museum or kept it "in good repair."[1]

---

[1] Wells's will further provided that in the event that the camp lodge was "destroyed by fire or otherwise," the camp lodge "shall be rebuilt from insurance on the buildings or from funds of the estate." An article from the town newspaper *Gonzales Inquirer*, dated February 22, 2018, was attached as an exhibit in the record and described Wells's lodge:

> Very little of the roof remains, the walls are leaning, windows are missing, screens are torn, doors are either gone or dangling by a lone hinge, the floor is overgrown with vegetation and caked in mud and leaves, scrap lumber litters the premises, rooms are unrecognizable-save an abandoned toilet in what must have been the bathroom and a rusting stove and overturned refrigerator in what was probably the kitchen. . . . The grounds of the camp lodge . . . are choked with 8-to 10-foot-tall weeds. . . . Collecting near the camp lodge are

Following the deed in 1999, Wells's trustees also "granted, sold and quitclaimed all of the minerals, and royalties, so reserved therefrom and any and all other property and interests in property . . . claimed by the [trust] lying and being situated west of U.S. Highway No. 183 in Gonzales County, Texas" to the City. The interest conveyance included the subject property, and the City thereafter entered into an oil and gas lease. However, according to the City, there has been no exploration, development, or production of oil, gas, or minerals on the subject property.

Seminary filed suit, arguing that the City, Kacir, and Schroeder failed to observe the limited use of the property for "preservation and nature-oriented activity," using the property instead for "rodeo competitions, trade shows, fundraisers, concerts, casino nights, gala dinners, and private events." Seminary claims multiple causes of action, including inverse condemnation, trespass-to-try-title of surface and minerals, and will construction declaratory relief.

Appellants filed a plea to the jurisdiction, denying that the City breached the terms of the deed. The City first refuted Seminary's inverse condemnation and constitutional taking claims, interpreting the relevant deed language and restrictions to allow for the subject property to be used for "general park and recreation purposes"—as the City alleges it has done. The City distinguishes the deed's requirements for the "Santa Anna Mound Tract" and the requirements for the "Santa Anna Mound Deer Park," with only the latter imposing a restriction for use as a natural habitat and wildlife preserve. With respect to Seminary's trespass-to-try-title claim, the individual appellants argue that they do not retain or exercise an ownership interest or occupy the property, therefore there

several pieces of rusting street maintenance equipment (some bearing City of Gonzales logos).

5

can be no basis for a trespass-to-try-title claim.[2]  Finally, the City argues its immunity insulates it from declaratory judgment relief.  The trial court denied appellants' plea to the jurisdiction, and appellants appealed.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (permitting immediate appeal of interlocutory order denying a plea to the jurisdiction by a governmental unit); *Nueces County. v. Ferguson*, 97 S.W.3d 205, 214 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (noting that a suit against a government official in his or her official capacity is, in actuality, a suit against the government unit).

## II.  APPLICABLE LAW AND ANALYSIS

A plea to the jurisdiction to assert governmental immunity "implicates courts' subject-matter jurisdiction."  *Harris County v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)).  Whether a court has subject matter jurisdiction, and whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, are questions of law reviewed de novo*.  Id.* at 612 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

When a plea to the jurisdiction challenges the pleadings, "we construe the pleadings liberally in favor of the plaintiffs."  *Miranda*, 133 S.W.3d at 226–27.  The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear a case.  *Id.* at 228.  A challenge to jurisdictional facts permits the reviewing court to consider relevant evidence submitted by the parties.  *Id.* at 227.  "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court

---

[2]  Although appellants' brief includes an argument disputing the viability of a claim of trespass-to-try-title against the City, that claim was not pled by the plaintiffs against the City.   It is therefore, not at issue on appeal.

6

cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Chambers-Liberty Ctys. Navigation Dist. v. State*, No. 17-0365, __ S.W.3d __, __ 2019 WL 2063575, at *4 (Tex. May 10, 2019) (citing *Miranda*, 133 S.W.3d at 227). The Texas Supreme Court has long recognized that the "jurisdictional inquiry may unavoidably implicate the underlying substantive merits of the case." *Id.*

## A. Inverse Condemnation Claim Against the City

In their first issue, appellants argue that the trial court erred in dismissing their plea to the jurisdiction regarding Seminary's inverse condemnation claim against the City. They contend that no constitutional taking of Seminary's property rights occurred because the property has been used as a public park.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17; *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 390 (Tex. 2011). Similarly, the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. A reversionary interest is a future interest in property which is compensable under the Fifth Amendment Takings Clause. *El Dorado Land Co., L.P. v. City of McKinney,* 395 S.W.3d 798, 803 (Tex. 2013).

Although a municipal government largely enjoys immunity from suit, a claim predicated upon a viable allegation of inverse condemnation, or constitutional taking, waives that immunity. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). To plead inverse condemnation, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property. *Id.*; *see also McKinney,* 395 S.W.3d at 801 ("[T]he Texas Constitution waives governmental immunity for the taking,

7

damaging or destruction of property for public use.") (internal citations omitted). The alleged "taking" can be in the form of "acquisition, damage, or destruction of property via physical or regulatory means." *Carlson*, 451 S.W.3d at 830.

Seminary alleges that the City failed to maintain Wells's camp lodge and grounds per the trust and deed requirements. Seminary also alleges the City inappropriately used the subject property for "rodeo competitions, trade shows, fundraisers, concerts, casino nights, gala dinners, and private events." The City does not dispute this use of the property, reasoning that their uses are sanctioned by the will and deed, and it asks us to review section (2)(e) of the will independently from section (2)(a).[3]

We decline to engage in a will construction analysis, or to provide an opinion on the viability of Seminary's claim on these particular facts, because Seminary alternatively pled facts on its inverse condemnation claim that went unanswered by the City. *See Carlson*, 451 S.W.3d at 830; *Sawyer Tr.*, 395 S.W.3d at 803; *see also Cameron County v. Tompkins*, 422 S.W.3d 789, 798 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied). In particular, Seminary pled facts indicating: (1) the City failed to comply with section (2)(d), requiring the maintenance of Wells's camp lodge and fenced grounds; and (2) this failure triggered the reversion clause in the will and deed, resulting in a taking of Seminary's reversionary interest in the property. *See Carlson*, 451 S.W.3d at 830. In pleading the facts required to establish an inverse condemnation claim, Seminary has effectually pled facts to waive the City's immunity. *See id.*

---

[3] Section (2)(e) requires the City to keep the "Santa Anna Mound Deer Park" property "maintained in its natural condition of natural woodland and shall never be cleared of trees." To this point, the City argues the "Santa Anna Mound Deer Park" is separate from the "Santa Anna Mound." Although the City is responsible for both, the City argues the will only prescribes "natural condition" maintenance for the former.

Construing the pleadings liberally in Seminary's favor and looking toward the intent, we hold that Seminary has alleged sufficient facts to affirmatively demonstrate the district court's jurisdiction. *See id.*; *see also Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 435–36 (Tex. App.—Austin 2018, pet. filed). We overrule appellants' first issue.

## B. Trespass-to-Try-Title Claim Against Individual Appellants

By their second issue, appellants contend that Kacier and Schroder are entitled to derivative governmental immunity from Seminary's trespass-to-try-title claim because Seminary sued Kacier and Schroder "in their official capacities only."

With one exception,[4] "a suit against a government employee in his official capacity is a suit against his government employer." *See Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011). Appellants do not acknowledge, however, that Seminary amended its pleading to make clear that it named Kacier and Schroder in their individual capacity— not official capacity. *See id.* at 383 ("[A] suit may be brought against a government employee in his individual capacity.") (footnotes omitted); *see also Nueces County v. Ferguson*, 97 S.W.3d 205, 213–14 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) ("[C]laims against governmental employees or officials in their official capacities are separate and distinct from claims against them in their individual capacities.").

Because Kacier and Schroder have been sued in their individual capacities only, they may not assert governmental immunity. *See Ferguson*, 97 S.W.3d at 215 ("Persons sued in their individual capacities, on the other hand, may not rely on sovereign immunity

---

[4] "'To fall within this *ultra vires* exception,' however, 'a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.'" *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009)).

protections for claims against them in that capacity, although they may assert the defense of official immunity.") (citing *Gonzalez v. Avalos*, 866 S.W.2d 346, 349 (Tex. App.—El Paso 1993), *writ dism'd w.o.j.*, 907 S.W.2d 443 (Tex.1995) (per curiam)). The trial court therefore did not err in its denial of appellants' plea to the jurisdiction. Appellants' second issue is overruled.

## C. The City's Immunity from Declaratory Judgment

In its last issue on appeal, appellants argue that the City retains immunity against Seminary's Uniform Declaratory Judgments Act (the UDJA) claim.

The UDJA generally permits a person who is "interested in a deed, will, written contract, . . . or whose rights, status, or other legal relations are affected by a statute" to obtain relief in the form of a declaration of rights, status, or other legal relations. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). The UDJA does not, however, unilaterally enlarge the trial court's jurisdiction. *Tex. Dept. of Tranp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (citing *Sawyer Tr.*, 354 S.W.3d at 388). Rather, the underlying action for which declaratory judgment is sought must be an action for which immunity has been expressly waived. *See id.*; *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009) ("Where statutory or constitutional provisions create an entitlement to payment, [suits seeking] compl[iance] with the law are not barred by immunity merely because they compel the state to make those payments.").

In its live pleadings, Seminary requests a judgment declaring:

a. the parties' rights, status, and legal relations under the Will, Codicil(s), and 1999 Deed given the City's past and present use of the Subject Property;

b. whether the City and [Individual Appellants] have acted in excess of their authority under the granting language of the Will, Codicil(s), and 1999 Deed;

10

c.   whether the Subject Property does not belong to the City due to the City's current use and the reversionary rights of Petitioner;

d.   whether the Subject Property, or part of it, and any income, or part of it, not used according to the terms of J.B. Wells's will, has reverted to Petitioner such that Petitioner has or should have possession of that property or income;

e.   whether the City and [Individual Appellants] have acted and are acting in excess of their authority in renting, leasing, or otherwise using the Subject Property's surface or minerals for purposes other than granted in the Will, Codicil(s), and 1999 Deed; and

f.   the amount of and possession of rights to any income generated from the Subject Property, surface or minerals, used in a manner other than for "public park purposes" as set forth in the Will, Codicil(s), and 1999 Deed.

Seminary's requested declaratory relief is a restatement of relief sought through its inverse condemnation claim.  We have already determined the City is not immune from Seminary's condemnation claim, therefore, Seminary has alleged sufficient facts to demonstrate the trial court jurisdiction.  *See Carlson*, 451 S.W.3d at 830.  We overrule appellant's third issue.  *See Sefzik*, 355 S.W.3d at 621–22.

### III.  CONCLUSION

We affirm the trial court's order.

GREGORY T. PERKES
Justice

Delivered and filed the
13th day of June, 2019.

11