**Opinion issued September 16, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00039-CV

———————————

## LARRY AND SHELIA BALL, Appellants

## V.

## THE CITY OF PEARLAND, Appellee

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 104288-CV**

---

## MEMORANDUM OPINION

Larry and Shelia Ball appeal from the trial court's order granting the City of

Pearland's motion to dismiss under Texas Rule of Civil Procedure 91a. In the trial

court, the Balls sought a declaration that they had a right to repurchase property that

was taken pursuant to the City's power of eminent domain in 2002. They argued that

a statute enacted in 2003, which provides a limited right to repurchase property taken for public use, should apply retroactively to them. They maintained that the failure to apply the later-enacted statute retroactively to their situation deprived them of due process under the United States and Texas Constitutions. Finally, they asserted that they possessed a remaining ownership interest in the property. The trial court rejected these arguments, finding the entire lawsuit to be baseless.

We agree that the Balls' lawsuit is baseless in law and fact because the later-enacted statute does not apply retroactively and because the Balls have no remaining interest in the surface estate of the land that was the subject of the 2002 taking. We affirm.

**Background**

Larry and Shelia Ball owned a 5.549-acre tract of land in Brazoria County (the "property"). Around 2000, the City of Pearland (the "City") filed suit to acquire the property by eminent domain "to be used for construction and connection of public safety facilities and other related uses" as authorized by Article 11, Section 5 of the Texas Constitution. The Balls and the City of Pearland settled. The City agreed to pay $625,000 in just compensation, and the trial court entered an agreed final judgment on October 25, 2002. The agreed final judgment recited the procedural history and the parties' stipulations. The decretal language provided, in relevant part:

It is therefore,

ORDERED that the 5.549 acres described in Exhibit "A", Plaintiff, City, is hereby vested with fee simple title and that fee simple title to this property is hereby divested out of Defendants, Ball. It is, further,

ORDERED that the fee simple title to the 5.549 acres described in Exhibit "A" is decreed to and vested in Plaintiff, City, provided, however, there is excluded from the estate vested in Plaintiff, City, and reserved to Defendants, Ball, any interest which they may have in all oil, gas, sulfur and other minerals under the fee simple title provided, however, that the Defendants, Ball, shall not be permitted to explore, develop, drill, mine, operate or produce for such oil, gas, sulfur and other minerals on the surface of the fee simple title, but will be permitted to extract oil, gas, sulfur and other minerals from and under the 5.549 acres by directional drilling or other means outside the boundaries of the 5.549 acres. It is, further,

ORDERED that Defendants, Ball, have and recover of and from Plaintiff, City, the sum of SIX HUNDRED TWENTY-FIVE THOUSAND TWO HUNDRED EIGHTY-SIX DOLLARS ($625,286.00).

. . . .

In 2003, the Texas Legislature enacted legislation that provided, under certain circumstances, a mechanism for the repurchase of property taken through eminent domain.[1] The statute, subchapter E of the Texas Property Code, allows the person from whom real property was acquired by eminent domain for a public use to repurchase the property if the public use for which it was acquired was canceled before such use, no progress was made toward that public use within ten years of the

---

[1] *See* TEX. PROP. CODE §§ 21.101–.103.

3

date of acquisition, or within ten years of acquisition, the property is no longer needed for such use or for a substantially similar one.[2]

In 2019, the Balls requested information regarding the status and progress of the property's public use. In August 2019, they filed suit seeking a declaratory judgment that the intended public use of the property was canceled, that subchapter E of the Property Code applies, and that they have the right to repurchase the property. The City filed special exceptions arguing that the Legislature expressly made subchapter E effective only as to acquisitions of property after January 1, 2004. The Balls amended their petition to seek a declaration that the City did not take the property "in fee simple unconditional." The City again specially excepted arguing that subchapter E does not apply retroactively and that it took ownership without conditions and with a reservation of mineral rights to the Balls. The trial court granted the special exceptions and ordered the Balls to amend their petition by November 22, 2019.

Before the deadline for the Balls to file their second amended petition, the City of Pearland filed a motion to dismiss the Balls' case under Texas Rule of Civil Procedure 91a because it was baseless in law or fact. The City argued that the Legislature expressly made subchapter E apply prospectively, and it did not apply to the acquisition of the Balls' property in 2002. The City also argued that the agreed

---

[2]     *See id.* § 21.101(a).

4

final judgment included no conditions or possibility of reverter and that the Balls had no right to repurchase the property.

The Balls' live pleading at the time of the trial court's ruling alleged: (1) the City did not take the property "fee simple unconditional"; (2) finding only prospective application of subchapter E based on legislative intent would deprive them of due process under the United States and Texas constitutions; and (3) they are entitled to the property under a theory of reversion because the property was never used "for construction and connection of public safety facilities and other related uses." In response to the second amended petition, the City asserted that there is no constitutional right to repurchase property taken pursuant to eminent domain and for which a property owner was justly compensated. It also argued that the Balls had previously agreed that they received just compensation in the 2002 agreed judgment.

In December 2019, the trial court dismissed the entire suit with prejudice, and the Balls appealed.

## Analysis

On appeal, the Balls contend that the court erred by granting the motion to dismiss. First, they argue that the City acquired the property subject to the condition that the property be put to a public use. Second, they argue that they have a constitutional right to repurchase the property because the City failed to use it for a

public use for more than 17 years. They maintain that their exclusion from the subchapter E repurchase program deprived them of "just compensation." Third, they argue that they have "a future interest, whether reversionary or otherwise, in the property."

## I.    Standard of review

Rule 91a allows a party to move for early dismissal of a cause of action on the grounds that it has no basis in law or fact. TEX. R. APP. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* We review a trial court's dismissal under Rule 91a de novo. *Walker v. Owens*, 492 S.W.3d 787, 789 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

"An agreed judgment has the same effect as any court judgment." *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). "An agreed judgment should be construed in the same manner as a contract." *Id.* We consider the entire agreed judgment, and we construe it in a manner that renders none of the provisions meaningless. *Id.*

## II.    Fee simple, surface, and mineral estates

"An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by

6

construction or operation of law." TEX. PROP. CODE § 5.001(a). Generally, when the term "fee simple title" is applied to "land," it means "the absolute and indefeasible ownership of everything from the top of the ground to the center of the earth." *Cty. Sch. Trustees of Upshur Cty. v. Free*, 154 S.W.2d 935, 937 (Tex. Civ. App.—Texarkana 1941, writ ref'd w.o.m.). "An instrument conveying land in fee simple transfers both the surface estate and all minerals and mineral rights, unless the instrument contains a reservation or expresses a contrary intention." *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016). "Texas law has always recognized that a landowner may sever the mineral and surface estates and convey them separately." *Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 60 (Tex. 2016). "A grantor may withhold for itself a part of its estate . . . by granting the entire estate but reserving the portion it desires to retain . . . ." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 748 (Tex. 2020).

"A governmental unit exercises its power of eminent domain through the process referred to as condemnation." *Burris v. Metro. Transit Auth. of Harris Cty.*, 266 S.W.3d 16, 19 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "Condemnation is the formal process by which private property is taken for a public use without the owner's consent, but on the payment of adequate compensation." *San Jacinto River Auth. v. Medina*, 19-0400, 2021 WL 1432227, at *4 (Tex. Apr. 16, 2021). Eminent domain and condemnation procedures are governed by chapter 21 of the Texas

Property Code. *See* TEX. PROP. CODE §§ 21.001–.103. "[T]he powers granted to condemn land are limited to the amount of property reasonably necessary for the public use."[3] *King v. Harris Cty. Flood Control Dist.*, 210 S.W.2d 438, 441 (Tex. Civ. App.—Galveston 1948, writ ref'd n.r.e.).

---

[3] Ordinarily, and "[e]xcept where otherwise provided by law, the interest acquired by a condemnor under this chapter does not include the fee simple title to real property, either public or private." TEX. PROP. CODE § 21.045. Article 3270, which was the predecessor to section 21.045, has been construed as a codification of the general rule limiting the amount of property taken for public use:

> We are not unmindful of the provisions of Article 3270, Vernon's Ann. Civ. Stats., which is a part of the statutory provisions relating to the subject of Eminent Domain (Title 52). This article provides that 'except where otherwise expressly provided by law, the right secured (under the power of eminent domain) shall not be so construed as to include the fee simple estate in lands.'

> As stated in Texas Jurisprudence, 'this enactment is but an enunciation of the general rule, obtaining even in the absence of statute, that the condemnation of property for a public use divests its owner of no right further than is necessary for the purpose for which the condemnation was authorized.' 16 Tex. Jur. 679.

*Meaney v. Nueces Cty. Nav. Dist. No. 1*, 222 S.W.2d 402, 407 (Tex. Civ. App.—San Antonio 1949, writ ref'd). Here, the City of Pearland did not acquire by condemnation fee simple title to the entire 5.549-acre tract of land because the agreed final judgment reserved to the Balls certain mineral rights. Moreover, the Balls did not argue in the trial court or in this court that their rights were affected in any way by section 21.045. *See* TEX. PROP. CODE § 21.045.

**III. Pearland acquired unconditional rights to the surface estate of the property.**

In 2002, the Balls entered into an agreed final judgment regarding the property. In the judgment, the court recited the procedural history. The second paragraph of the judgment states:

> Plaintiff, City filed this proceeding to acquire fee simple title to the land, and all improvements located thereon, of a 5.549 acre tract of land (the "Property") more particularly described in Exhibit "A", ***for the purpose of acquiring property to be used for construction and connection of public safety facilities and other related uses*** by Article 11, Section 5 of the Texas Constitution.

(Emphasis added.)

The court also recited ten factual statements to which the parties stipulated. Based in part on the stipulations, the court concluded that it had jurisdiction. The court then decreed:

> It is therefore,
>
> ORDERED that the 5.549 acres described in Exhibit "A", Plaintiff, City, is hereby vested with fee simple title and that fee simple title to this property is hereby divested out of Defendants, Ball. It is, further,
>
> ORDERED that the fee simple title to the 5.549 acres described in Exhibit "A" is decreed to and vested in Plaintiff, City, provided, however, there is excluded from the estate vested in Plaintiff, City, and reserved to Defendants, Ball, any interest which they may have in all oil, gas, sulfur and other minerals under the fee simple title provided, however, that the Defendants, Ball, shall not be permitted to explore, develop, drill, mine, operate or produce for such oil, gas, sulfur and other minerals on the surface of the fee simple title, but will be permitted to extract oil, gas, sulfur and other minerals from and under

9

the 5.549 acres by directional drilling or other means outside the boundaries of the 5.549 acres. It is, further,

ORDERED that Defendants, Ball, have and recover of and from Plaintiff, City, the sum of SIX HUNDRED TWENTY-FIVE THOUSAND TWO HUNDRED EIGHTY-SIX DOLLARS ($625,286.00).

. . . .

The Balls contend on appeal that the statement of purpose at the beginning of the judgment is a condition on the use of the property. The City of Pearland argues that the statement of purpose was a recital, not a condition. We agree with the City.

A recital is "an account or description of some fact or thing." *Recital*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see Griffith Techs., Inc. v. Packers Plus Energy Servs. (USA), Inc.*, No. 01-17-00097-CV, 2017 WL 6759200, at *4 (Tex. App.—Houston [1st Dist.] Dec. 28, 2017, no pet.) (mem. op.) ("A recital in a contract acts as the formal statement establishing the reason for the transaction."). "Recitations preceding the decretal portion of a judgment are not a part of the rendered judgment." *Pye's Auto Sales, Inc. v. Gulf States Fin. Co.*, No. 01-05-00670-CV, 2007 WL 1559933, at *4 (Tex. App.—Houston [1st Dist.] May 31, 2007, no pet.) (mem. op.); *see Goode v. Avis Rent–A–Car, Inc.*, 832 S.W.2d 202, 203 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("The validity of summary judgment does not rest in, nor is it controlled or qualified by, the recitals, it is only decretal portion of judgment that operates as an adjudication of the cause."); *Ellis v. Mortgage & Trust, Inc.*, 751

10

S.W.2d 721, 724 (Tex. App.—Fort Worth 1988, no writ) ("The recitations preceding the decretal portion of the written instrument do not suffice to complete the rendition of the judgment. . . . Although reasons and findings are proper inclusions in a judgment, the reasons given form no part of the judgment rendered."); *see also State v. Brownlow*, 319 S.W.3d 649, 653 (Tex. 2010) ("Express decretal language in a judgment controls over recitals.").

The statement of purpose precedes the decretal language of the agreed judgment, and it forms no part of the judgment rendered. *See Pye's Auto Sales*, 2007 WL 1559933, at *4. The agreed judgment reserved mineral rights to the Balls, and it expressly ordered that the City take "fee simple title" to the 5.549-acre tract. Thus, fee simple title ***to the surface estate*** vested in the City of Pearland. *See Piranha Partners*, 596 S.W.3d at 748; *Coyote Lake Ranch*, 498 S.W.3d at 60; *Hysaw*, 483 S.W.3d at 8. The agreed final judgment did not reserve or retain for the Balls any property rights to the surface estate. It did not include any provision for the Balls to repurchase the property taken by the City. Construing the agreed final judgment as written, we conclude that the City's ownership of the surface estate was unconditional. *See Gulf Ins. Co.*, 22 S.W.3d at 422.

Relying on *El Dorado Land Co., L.P. v. City of McKinney*, 395 S.W.3d 798 (Tex. 2012), the Balls further argue that they possess a future interest in the property. El Dorado Land Company sold property to the City of McKinney to be used for a

public park. 395 S.W.3d at 799. The special warranty deed conveying the land to the city expressly included two conditions: (1) "the conveyance was 'subject to the requirement and restriction that the property shall be used only as a Community Park," and (2) "[i]f the city decided not to use the property for that purpose, the deed further granted El Dorado the right to purchase the property." *Id.* As we have explained, the 2002 agreed judgment did not include any conditions on the conveyance to the City of Pearland. It did not expressly give the Balls any right to repurchase the property. We conclude that the Balls possess no future interest in the surface estate of the property.

### III. The Balls are not entitled to repurchase the property under the Property Code.

The Balls assert that they should be permitted to repurchase the property in accordance with subchapter E of chapter 21 of the Texas Property Code. They make several arguments, none of which are meritorious.

First, the Balls argue that they have a common law vested interest in the property that would entitle them to repurchase the property under a retroactive application of subchapter E. We have explained that the Balls retained only a mineral interest in the property by virtue of the 2002 agreed judgment. Fee simple title to the surface estate of the property vested in the City of Pearland, and the Balls possess no present or future rights in the property, aside from the mineral rights.

12

Next, the Balls make several arguments in support of retroactive application of subchapter E. They argue that the court has the ability to apply subchapter E retroactively because the only indication of prospective application is mere legislative intent and the constitutional prohibition against ex post facto laws does not apply. They also advocate for retroactive application under equitable principles.

When a statute is clear and unambiguous, we must apply its words according to their common meaning.[4] *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40–41 (Tex. 2020). The Legislature unambiguously made subchapter E effective on January 1, 2004, and prospective in application. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 1307, §§ 1–4, 2003 Tex. Sess. Law Serv. Ch. 1307.

When it enacted subchapter E of chapter 21 of the Property Code, the Legislature expressly provided that the statute would take effect on January 1, 2004, and that it would apply prospectively only, not retroactively. *Id.* The Act "relating

---

[4]   The "General and Special Laws of Texas" is the official publication of the laws enacted by the Texas Legislature and certified by the Secretary of State. *See* TEX. CONST. art. III, § 43(a) ("The Legislature shall provide for revising, digesting and publishing the laws, civil and criminal . . . ."); TEX. CONST. art. IV, § 21 ("He [the secretary of state] shall authenticate the publication of the laws . . . ."); *Murphy v. State*, 95 S.W.3d 317, 321 n.4 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Other than the publication of the session laws, Texas does not publish an official set of its laws similar to the *United States Code*."); https://lrl.texas.gov/collections/sessionlaws.cfm (last accessed Aug. 2, 2021) ("The General and Special Laws of Texas, often referred to as the 'session laws,' constitute a complete set of all bills passed into law by each session of the Texas Legislature. The Secretary of State assigns each Act a chapter number. Following each legislative session, the Acts are arranged in chapter-number order and are published as a bound set.").

to the repurchase of real property acquired by a governmental entity through eminent domain" provides:

> SECTION 2:       Chapter 21, Property Code, is amended by adding Subchapter E to read as follows . . . .
>
> SECTION 3.       (a) Subchapter E, Chapter 21, Property Code, as added by this Act, applies only to a real property interest acquired by a governmental entity on or after the effective date of this Act.
>
> (b) A real property interest that was acquired by a governmental entity before the effective date of this Act through eminent domain for a public use is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose.
>
> SECTION 4:       This Act takes effect January 1, 2004.

*Id.*

Because the Legislature expressly and unambiguously provided that the Act applied only to real property interests acquired on or after the effective date of the Act, no court has discretion to apply the statute retroactively. *See Hegar*, 605 S.W.3d at 41.

Finally, the Balls argue that failing to apply subchapter E retroactively violates their constitutional rights. The Balls' second amended petition pleaded:

> 13.    Here the Defendants are asking the Court to excuse <u>seventeen years</u> of inaction following a condemnation proceeding. The Court's application of legislative intent to a statute with no clear textual limitations currently infringes upon Plaintiff's Due Process under the 5th and 14th Amendment of the Due Process Clause of the Constitution, as well as Article 1, Section 19 of the Texas Constitution. U.S. Const. amend. XIV; U.S. Const. Amend. V; Tex. Const. art. I, § 19. Such

14

deprivation of personal property cannot be ignored. The Plaintiffs' Constitutional rights should not be jeopardized to justify the Defendants' delay of nearly 2 decades when there is a statute allowing for restoring the Plaintiff's constitutional rights. Legislative Intent should not be used to circumvent the Plaintiff's constitutional rights.

Clerk's R. 84.

In their appellate brief, the Balls argued:

28.    The US Constitution states that private property shall not be taken for public use without just compensation, and that no State shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. Amend V; U.S. Const. amend. XIV, § 1. Further, the Texas Constitution provides for a similar restriction against the deprivation of property except by due course of the law of the land. Tex. Const. art. I, § 19. In this case PEARLAND has precluded the BALLS from just compensation by disallowing them to participate in the existing statutory repurchase laws. PEARLAND has potentially profited from seventeen plus years of increased land value and growth in the area surrounding the property and if PEARLAND has cancelled the public use for the land then the BALLS should be able to repurchase the property back from PEARLAND at its present market value.

App. Br. 12.

We have already concluded that the Legislature unambiguously enacted subchapter E to be only prospective in application. To the extent that the Balls have intended to argue that the statute is unconstitutional as applied to them, the arguments are inadequately briefed. *See* TEX. R. APP. P. 38.1.

## Conclusion

We affirm the trial court's judgment.

15

Peter Kelly
Justice

Panel consists of Justices Kelly, Guerra, and Farris.