**Affirmed and Opinion filed September 29, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00507-CV

**BOBBY TRANT, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF HAROLD B. TRANT, DECEASED, AND OF THE ESTATE OF ROSEALICE TRANT, DECEASED, AND THE ADDITIONAL HEIRS AND BENEFICIARIES OF THOSE ESTATES, PATSY TRANT LANGFORD AND ROBIN TRANT JOHNSON, Appellants**

**V.**

**BRAZOS VALLEY SOLID WASTE MANAGEMENT AGENCY, INC., D/B/A BVSWMA, INC., Appellee**

**On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Cause No. 33014**

## O P I N I O N

In nine issues, appellants Bobby Trant,[1] Patsy Trant Langford, and Robin

---

[1] Bobby Trant appears individually and as executor of the estates of Harold B. and Rosealice Trant.

Trant challenge the trial court's order granting appellee Brazos Valley Solid Waste Management Agency's plea to the jurisdiction and dismissing the case for want of jurisdiction.[2] Concluding that the trial court lacks jurisdiction over the Trants' claims, we affirm.

## *Background*

Harold and Rosealice Trant entered into an Option Contract with the Cities of Bryan and College Station, pursuant to which the Cities obtained the right to purchase approximately 382 acres of land in Grimes County from Harold and Rosealice. The Option Contract stated: "[The Cities] contemplate using the Property as a . . . Landfill." The Cities subsequently purchased the property, and the parties executed a General Warranty Deed, which incorporated the "Terms, Conditions, and Representations" in the Option Contract. The Cities and Harold and Rosealice also signed an Easement Agreement for Access granting the Trants non-exclusive access to their land adjacent to the property.

The Cities formed the Agency, a governmental entity that currently operates a landfill on the property. In 2014, the Trants learned that the Cities had decided to put a firing range on a portion of the property near their land. The Trants sent a letter to the Cities and the Agency, contending that the property could be used only as a landfill. Counsel for the Agency responded by letter that while the Option Contract contemplated an intended use of the property as a landfill, the contract did not restrict the Cities' use of the property to such purpose.

The Trants filed suit against the Agency, bringing claims apparently for breach of contract and fraudulent inducement and seeking actual, consequential, and exemplary damages as well as an injunction preventing the Agency from using

---

[2] We refer to Brazos Valley Solid Waste Management Agency as "the Agency."

the property as a firing range.[3] The Agency filed a plea to the jurisdiction, asking the trial court to dismiss the suit on the basis that governmental immunity bars the Trants' claims. The Trants responded that (1) the Agency is not immune from suit to enforce the Option Contract, which the Trants construe as a condemnation settlement agreement, or from their claim to enforce land use restrictions; and (2) the Agency's immunity has been waived under Chapter 271 of the Local Government Code, addressed below. The trial court granted the Agency's plea and dismissed the Trants' claims for want of jurisdiction.

## *Discussion*

In nine issues, the Trants challenge the trial court's order dismissing their claims for lack of jurisdiction. The Trants argue that their sale of the property to the Cities is the equivalent of a condemnation settlement agreement and assert the trial court has jurisdiction over the Trants' claims because (1) a waiver of immunity is unnecessary to enforce purported use restrictions in the parties' agreements; (2) the Cities' use of part of the property for a firing range amounts to an unconstitutional taking; (3) the Agency is not immune from suits to enforce condemnation settlement agreements; and (4) the Cities and the Agency waived immunity under chapter 271 of the Local Government Code.[4]

---

[3] The Trants' live petition is not a model of clarity. Construing the petition liberally, we interpret the Trants' claims as breach of contract and fraudulent inducement. The Trants contend that the Cities made false representations to Howard and Rosealice as to the intended use of the property to induce them into selling. We note, however, the Trants filed suit only against the Agency and not the Cities.

[4] Chapter 271, discussed in further detail below, waives immunity as to local government entities that enter into certain types of contracts. The Trants also argue (1) the Agency lacks authority to operate a firing range; (2) a fact question exists as to whether the Cities exercised bad faith in using their power of eminent domain to gain an unfair economic advantage; (3) the Trants will suffer irreparable injury if the firing range is opened on the property; (4) the Trants will have no recourse after the firing range has been opened; and (5) the Agency "should not be permitted to act as an illicit surrogate for the Cities." We decline to address these issues because

3

The Agency describes itself as a "local governmental non-profit corporation wholly owned by" the Cities and a "governmental unit" as defined in Chapter 101 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 101.001(3). As a "local governmental" corporation owned by the Cities, the Agency is a local governmental entity. *See Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 & n.4 (Tex. 2014); Tex. Loc. Gov't Code § 271.151(3)(A), (C). Local governmental entities enjoy governmental immunity from suit, unless immunity is expressly waived.[5] *Church & Akin*, 442 S.W.3d at 300. Governmental immunity includes both immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Id*. A governmental entity that enters into a contract necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit. *Id*. Unlike immunity from liability, immunity from suit deprives the courts of jurisdiction and thus completely bars the plaintiff's claim. *Id*.

We review a plea challenging the trial court's jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133

---

they relate to the merits of the Trants' underlying claims. In reviewing a plea to the jurisdiction, we consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *see also Carlson v. City of Houston*, 309 S.W.3d 579, 582 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[5] Sovereign immunity protects the State and state-level governmental entities, while governmental immunity protects political subdivisions of the State such as counties, cities, and districts. *Church & Akin*, 442 S.W.3d at 300 n.4. The two doctrines are otherwise the same, and courts often use the terms interchangeably. *Id*.

S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id*. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See id*. at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id*. at 228. Under this standard, we credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See id*. The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id*. If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id*.

We generally analyze jurisdiction separately for each claim. *See In re C.D.B.*, No. 14-13-00718-CV, 2015 WL 1405921, at *2 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no. pet.). When, as here, the claims are dependent on the same facts, however, it is not always necessary to address each claim separately.[6] *See City of Dallas v. Jones*, No. 05-07-00831-CV, 2008 WL 588997, at *4 (Tex. App.—Dallas Mar. 5, 2008, pet. denied) (mem. op.); *cf. Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013) (holding in the context of personal jurisdiction challenge that courts need not assess forum contacts on a claim-by-claim basis if all claims arise from same forum contacts).

---

[6] The Texas Supreme Court has not addressed whether it is necessary to analyze each claim separately when they all arise from the same facts in the context of a plea to the jurisdiction. *Shannon v. Mem'l Drive Presbyterian Church U.S.*, No. 14-14-00359-CV, 2015 WL 5138139, at *2 n.2 (Tex. App.—Houston [14th Dist.] Sept. 1, 2015, no. pet. h.). We note that there may be some instances in which jurisdiction must be analyzed separately as to each claim even when the claims are dependent on the same facts, for example, when certain types of immunity apply only to certain types of claims. *See id*.

## I. No Violation of Restrictive Use Covenant

In their fourth issue, the Trants assert that the Agency is not immune from an action to enforce restrictive use covenants in the General Warranty Deed and Easement Agreement.[7] The Trants cite *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 801 (Tex. 2013), for the proposition that a governmental entity is not entitled to immunity for the violation of a restrictive use covenant. The supreme court held in that case that a reversionary interest "consisting of the grantor's right to purchase real property on the occurrence of a future event [was] a sufficient property interest to support an inverse condemnation claim." *Id*. at 799-801 (holding that, if the city violated the use restriction in the conveyance deed, El Dorado retained the power to terminate the City's estate). There is no reversionary interest at issue here.[8] We need not decide whether *El Dorado* stands for the broader proposition the Trants assert, because we conclude they have not raised a material issue of fact regarding the existence of any restrictive use covenant in the General Warranty Deed or Easement Agreement that the Agency may have violated.[9]

Our primary concern in interpreting a contract is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *J.M. Davidson,*

---

[7] We discuss the issues out of order for organizational purposes.

[8] The Trants argue, "Nothing in the record supports the conclusion that the Cities acquired fee simple absolute title to the land in question." But they point to no reversionary interest in the General Warranty Deed that would allow them to reacquire the property upon the occurrence of a future event. The Trants contend that the Cities "negotiated, accepted by deed and took by condemnation" the property for use only as a landfill. For the reasons discussed below, we disagree.

[9] The other cases the Trants cite are similarly distinguishable. *See, e.g., Leeco Gas & Oil Co. v. Nueces Cnty.*, 736 S.W.2d 629, 631-32 (Tex. 1987) (holding a government entity must pay adequate compensation to condemn a reversionary interest retained by a grantor of land); *Truong v. City of Houston*, 99 S.W.3d 204, 211-13 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding city's enforcement of deed restrictions was a governmental function and city was immune from landowners' affirmative defenses).

*Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract, so that none will be rendered meaningless. *Id*. When interpreting restrictive covenants, we apply the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Covenants restricting the free use of land are not favored in the law. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). Therefore, when a restrictive covenant may reasonably be interpreted in more than one way, we will resolve all doubts in favor of the free and unrestricted use of the property, strictly construing the restrictive clause against the party seeking to enforce it. *Id*.; *Zgabay v. NBRC Prop. Owners Ass'n*, No. 03-14-00660-CV, 2015 WL 5097116, at *2 (Tex. App.—Austin Aug. 28, 2015, no. pet. h.) (mem. op.). The words used in the restriction, and the restriction as a whole, may not be enlarged, extended, stretched, or changed by construction. *Wilmoth*, 734 S.W.2d at 657. The party seeking to enforce a restrictive covenant has the burden of showing that the restriction is valid and enforceable. *Gillebaard v. Bayview Acres Ass'n*, 263 S.W.3d 342, 347 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The Trants argue that the General Warranty Deed includes a restrictive use covenant allowing the land to be used only as a landfill. As set forth above, the General Warranty Deed incorporates the "Terms, Conditions, and Representations" in the Option Contract. The Option Contract states that the Cities "contemplate using the Property as a . . . Municipal Sanitary Landfill."[10] However, nothing in the language of the General Warranty Deed or Option Contract indicates that the Trants retained a possessory interest in the property contingent on the Cities' using it as a landfill. *Cf. El Dorado Land Co.*, 395 S.W.3d at 800-01. The Option

---

[10] "Contemplate," in this context, means "to intend or anticipate." *The American Heritage Dictionary* 316 (2d col. ed. 1991).

Contract and the General Warranty Deed do not include a restrictive use covenant. The only language referencing any use of the property, discussed above, merely reflects how the Cities *anticipated* using the property—the Cities did not agree to use the property only as a landfill. We may not enlarge the words of the contract. *See Wilmoth*, 734 S.W.2d at 657. Accordingly, the Trants failed to raise a material issue of fact as to a restrictive use covenant in the General Warranty Deed or Option Contract that the Agency has violated.

The Trants further argue that the Agency has violated restrictive use covenants in the Easement Agreement. The Trants alleged in their petition that the Agency breached the Easement Agreement by "authorizing its contractors, agents, employees, licensees and/or lessees to use the easement . . . to operate and access its landfill and [having] surveyors staking off the 'firearm range.'" The Trants assert that under the Easement Agreement, the public is not allowed "to use the Easement Property for any purpose."

In the Easement Agreement, the Cities granted the Trants the "***non-exclusive right*** to use [an] existing gravel road . . . for pedestrian and vehicular ingress and egress" to the Trants' property adjacent to the Cities' property (emphasis added). The Cities reserved

> the right to continue to use and enjoy the surface of the Easement Property for all purposes that relate to [the Cities' and their] successors and assigns['] use, occupancy, development and operations on and ingress to and egress from [the Cities' property] and do not interfere with or interrupt the use or enjoyment of the Easement by [the Trants] for the Easement Purposes. [The Cities and their successors and assigns also reserved] the right to use all or part of the Easement . . . solely for the purposes of use, occupancy, operations, development and ingress to and from [the Cities' property] and the right to convey to others the right to use . . . the Easement in conjunction with [the owner of the Trants' property], as long as such further conveyance is limited to the use, occupancy, operation,

8

development and ingress to and egress from the [Cities' property] and is subject to the terms of this agreement.

In the Easement Agreement, the Cities, as grantor, expressly stated that "nothing herein shall be construed as . . . granting the public any right to use the Easement Property," "an agreement, commitment[,] or statement of intent by [the Cities to] dedicate[ the Easement Property] to the public at any time in the future," or "granting any property owner . . . other than the owner [of the Trants' property], any right to use the Easement Property for any purpose."

Construing the Easement Agreement as a whole, we reach the following conclusions: (1) the Trants' right to use the easement was non-exclusive; (2) the Cities reserved the right to use the easement and could convey that right to others for "the use, occupancy, development and operations on and ingress to and egress from the [Cities' property]"; (3) the Cities declined to grant public access to the easement in the Easement Agreement, but the Easement Agreement does not include a restrictive covenant requiring the Cities to limit future access of the easement by the public; and (4) nothing in the Easement Agreement prevents the Cities from, as alleged, authorizing others "to use the easement . . . to operate and access [the] landfill" and to stake off a firearm range. Accepting as true the Trants' allegation regarding the Agency's use of the easement, we conclude that they failed to raise a material issue of fact as to a restrictive use covenant in the Easement Agreement that the Agency has violated under the facts as alleged.

Moreover, under the plain language of the Easement Agreement, the Trants could seek enforcement of the Easement Agreement "by restraining orders and injunctions" only "on proof of the existence of interference." They expressly waived any "claim against [the Cities] for breach of [the Easement Agreement] until and unless [the Cities] failed, after receipt of written notice [from the Trants,

9

to] cure . . . such alleged deficiency . . . ." The Trants pleaded that putting a firearm range on the subject property will in the future violate "the entire length of the access easement" and "impact, trespass upon and prevent the full use of the other properties and the property rights still owned by deed exceptions and reservations by the Trants within the area." Thus, the Trants concede that the Agency has not yet put a firing range on the property. Under the express terms of the Easement Agreement, any breach would be actionable only upon "proof of the existence of interference" with the Trants' use and enjoyment of the easement and only after the Agency has been given an opportunity to cure any breach. Because the Trants have not pleaded a current interference with their use and enjoyment of the easement, their pleading has affirmatively negated their claim against the Agency for breach of contract.

For the foregoing reasons, we overrule the Trants' fourth issue.

## II. No Facts Alleged to Demonstrate Jurisdiction based on Unconstitutional Taking of Property

We address issues one and two together because they both relate to the purported unconstitutional taking of property. In their first issue, the Trants assert that the purported unauthorized use of the easement and the property for purposes other than as a landfill constitutes an unconstitutional taking of the property.[11] In that connection, they assert that they are entitled to an injunction for the Agency's unlawful use of the property. Because we conclude for the foregoing reasons that the Cities are not required to use the property only as a landfill, we find this

---

[11] Although the Trants' petition refers to "the placement of the gun range where it will most impact, trespass upon and prevent the full use of the other properties and property rights still owned by deed or exceptions and reservations by the Trants," the Trants' counsel clarified at oral argument that they are not presently asserting a claim for taking, damage, or trespass regarding their adjacent property or the drill sites on the Cities' property that have been designated for use by the Trants and other mineral interest owners.

10

argument to be incorrect. However, we shall address whether the Trants otherwise have demonstrated the trial court's jurisdiction over their takings claim. In their second issue, the Trants argue that their sale of land to the Cities was tantamount to a formal condemnation proceeding that was settled by the Trants' agreement to sell the property. The Trants contend the purpose of this lawsuit is to enforce the parties' settlement agreement and the Agency is not immune from such suits.

Under the Texas Constitution, no property may be taken by a government entity without adequate compensation, except by consent. Tex. Const. art. I, § 17(a); *City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012). Governmental immunity does not shield a municipality from an action for compensation under the takings clause. *Smith v. City of League City*, 338 S.W.3d 114, 121 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Condemnation is the procedure by which a sovereign exercises its right to take property of a private owner for public use, without consent, upon the payment of just compensation. *City of Carrollton v. Singer*, 232 S.W.3d 790, 797 (Tex. App.—Fort Worth 2007, pet. denied) (citing Tex. Prop. Code §§ 21.011–.065). Generally, the government compensates the owner either by paying a mutually agreed price or, if the landowner and municipality cannot agree on the amount of adequate compensation, paying the value determined in a statutory condemnation proceeding. *Id*. If either party objects to the value established in the condemnation proceeding, the case is tried as any civil lawsuit. *Id*. at 798. As with any claim, a condemnation claim may be settled before a lawsuit is filed. *See id.* at 797.

When a governmental entity is exposed to suit—such as through a claim seeking compensation for a governmental taking—because of a waiver or lack of immunity, it cannot nullify that waiver or lack of immunity by settling the claim with an agreement on which it cannot be sued. *Tex. A & M Univ.-Kingsville v.*

11

*Lawson*, 87 S.W.3d 518, 521 (Tex. 2002). In that connection, the Fort Worth Court of Appeals held that a city did not have governmental immunity for a breach of contract claim involving the breach of an agreement in settlement of a condemnation claim because the governmental entity would not have had immunity from the underlying takings claim. *Singer*, 232 S.W.3d at 799-800.[12] In holding that the City was not immune from suit, the court noted in the absence of the settlement agreement, "the [plaintiffs] would have [had] a claim against the City for adequate compensation for the City's [taking] of their property . . . for which the City would not be immune." *Id.* at 800.

We need not decide whether the Option Contract was, as alleged by the Trants, a settlement of a condemnation claim (which the Agency vigorously disputes), because the Trants have not raised a material issue of fact regarding whether the contract was breached. They have alleged only that "the Option Contract specifically limited the taking of each tract of property for 'the construction, operation, and maintenance of a solid waste facility and landfill'" and "[s]ince all takings and transfer set forth herein were made pursuant to condemnation or the threat of condemnation, [the Agency] has waived its right to sovereign or governmental immunity." As explained above, the contract contains no such limitation. Accordingly, the Trants did not allege an unconstitutional taking for which the Agency would not be immune as a basis for the trial court's jurisdiction. *See id.*; *see also Kaufman Cnty. v. Combs*, 393 S.W.3d 336, 345 (Tex.

---

[12] The settlement agreement in the *Singer* case was intended to settle the Singers' claim for adequate compensation, for which the municipality did not have immunity. *Singer*, 232 S.W.3d at 795, 799 (citing Tex. Const. art. I, § 17). The Singers conveyed a right of way to the City of Carollton to extend a road. *Id.* at 793. For its part, the City agreed to construct an entrance to the road from the Singers' property and not to close the median cut onto the old road until the new road was completed. *Id.* The Singers were not satisfied with the quality and appearance of the entrance, and the City prematurely closed the median cut. *Id.* at 793-94. The Singers filed suit for breach of contract. *Id.* at 794.

App.—Dallas 2012, pet. denied) ("Although governmental immunity does not shield a governmental entity from a valid takings claim, it does apply when a plaintiff does not allege a valid takings claim.").

The Trants link their fraud claim to their takings claim. They did not assert a basis below or in their opening brief on appeal upon which the Agency's immunity as to the Trants' fraud claim would be waived. However, they filed a supplemental brief after oral argument contending only that the trial court has jurisdiction to grant them injunctive relief as a remedy for the Agency's purportedly fraudulent unconstitutional taking of their property. Because the Trants have not affirmatively demonstrated the trial court's jurisdiction over their takings claim, they similarly have not affirmatively demonstrated the trial court's jurisdiction over their fraud claim.

The Trants amended their petition twice after the Agency filed its plea to the jurisdiction. The Agency pointed out at the hearing on the plea to the jurisdiction that the Trants had not alleged an unconstitutional taking in their previously filed petitions. The Trants did not amend their petition after the hearing to assert that they did not receive adequate compensation for their property, and the record does not indicate that they sought to do so. The trial court dismissed the case over a week later. Having had multiple opportunities to allege facts that affirmatively demonstrate the court's jurisdiction over their claim, the Trants are not entitled now to an additional opportunity to replead that they did not receive adequate compensation for the property. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action."); *Thornton v.*

*Ne. Harris Cnty. MUD 1*, 447 S.W.3d 23, 35 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding, when plaintiffs raised basis for jurisdiction for first time on appeal—and thus failed to allege basis in responses to plea to jurisdiction and summary judgment motion—court of appeals was not required to remand "for another opportunity to replead"); *Harris Cnty. v. Cypress Forest Pub. Util. Dist. of Harris Cnty.*, 50 S.W.3d 551, 554 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (noting plaintiff's failure to take advantage of multiple pleading opportunities).

We overrule the Trants' first and second issues.

### III. No Waiver of Immunity under Chapter 271 of the Local Government Code

In their third issue, the Trants argue that the terms of the Option Contract incorporated into the General Warranty Deed required them to provide services to the Cities and thus the Agency's immunity was waived under chapter 271 of the Local Government Code. Under chapter 271, the legislature waived sovereign immunity as to local governmental entities that enter into contracts for goods or services for the purpose of adjudicating claims for breach of contract. Tex. Loc. Gov't Code §§ 271.151(2)(A), 271.152. Subsection 271.151(2)(A), in relevant part, defines the types of contracts subject to the waiver of immunity: "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id*. § 271.151(2)(A). Chapter 271 waives immunity only with respect to a "suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." *Nat'l Pub. Fin. Guarantee Corp. v. Harris Cnty.-Houston Sports Auth.*, 448 S.W.3d 472, 482 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting Tex. Local Gov't Code § 271.152).

14

We need not decide whether the Option Contract is an agreement to provide goods or services subject to chapter 271 because we conclude that chapter 271's waiver of immunity does not extend to the Trants' claims. Although the Trants assert a claim for breach of contract, it is not the type of claim envisioned by chapter 271. The waiver of immunity for breach of contract claims in chapter 271 is expressly limited to claims for "the balance due and owed by the local government entity under the contract," "the amount owed for change orders or additional work . . . in connection with the contract," or related attorney's fees and interest.[13] Tex. Local Gov't Code § 271.153(a). Moreover, most consequential damages are disallowed, as well as exemplary damages. *Id*. § 271.153(b).

As set forth above, the Trants' breach of contract claim hinges on their allegations that the Agency will breach the General Warranty Deed by using the property for a purpose other than that set forth in the contract and the Agency will breach the Easement Agreement in the future. The Trants do not contend that there is a balance "due and owed" from the sale of the property and thus do not seek such damages. Because the Trants have failed to identify a breach of contract by the Agency that would support a waiver of immunity, we conclude the Agency's immunity for the Trants' breach of contract claim has not been waived under chapter 271. *See Nat'l Pub. Fin. Guarantee Corp.*, 448 S.W.3d at 485. Because the alleged anticipated breaches do not support a waiver of immunity under chapter 271, the Trants' pleading affirmatively negates the trial court's jurisdiction over this claim. *See City of Houston v. Song*, No. 14-11-00903-CV, 2013 WL 269036, at *4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, pet. denied) (mem. op.) (concluding plaintiffs' pleadings affirmatively negated jurisdiction over their takings claim when they did not allege a compensable material and substantial

_____

[13] Specific performance or injunctive relief is available under certain circumstances not applicable here. Tex. Local Gov't Code § 271.153(c).

15

impairment of access to their properties). Accordingly, we do not remand for an opportunity to replead this claim. *See id*. at *4 n.7.

We overrule the Trants' third issue.

### *Conclusion*

Concluding that the Agency is immune from suit under these circumstances and the trial court lacks jurisdiction over the Trants' claims, we affirm the judgment of the trial court.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Jamison, Busby, and Brown.