**REVERSE and RENDER and Opinion Filed August 13, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-01273-CV

**TEXAS DEPARTMENT OF TRANSPORTATION, Appellant**
**V.**
**PRIMARY MEDIA GROUP, INC., Appellee**

**On Appeal from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-21-1352**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Goldstein

The Texas Department of Transportation (TXDOT or Department) appeals the trial court's order denying TXDOT's motion to dismiss for lack of jurisdiction. In a single issue, TXDOT argues that, because Primary Media failed to establish a waiver of sovereign immunity, the trial court should have dismissed the case for want of jurisdiction. We reverse the trial court's judgment and render judgment dismissing Primary Media's claims for want of jurisdiction.

## PRIMARY MEDIA'S SECOND AMENDED PETITION

In September 2021, Primary Media filed its original petition asserting breach of contract claims against TXDOT in connection with Primary Media's execution of certain quitclaim deeds and applications to relocate four impacted outdoor advertising signage. After the filing of TXDOT's motion to dismiss for lack of jurisdiction, but prior to the hearing, Primary Media amended its petition twice, the Second Amended Petition being the live pleading at the time of the hearing (herein "the petition"). The facts set forth in this section are taken directly from Primary Media's petition.

Primary Media is an owner and operator of off-premise, outdoor advertising signs commonly known as billboards throughout Texas, frequently located adjacent to interstate highways and major thoroughfares. TXDOT, responsible for widening and improving state highways, is also the agency charged with regulating and permitting commercial signs located on the interstate and primary systems.

The petition outlined TXDOT's treatment of billboards in eminent domain proceedings as follows:

> When acquiring property on which a billboard is located to accommodate a public improvement project, the State treats sign owners differently than other property owners. Acting through the Department, prior to the commencement of formal condemnation proceedings, the State makes an offer to a billboard owner equal to the appraised value of a sign, less a nominal retention value, in exchange for the sign owner's agreement to remove the impacted billboard.

A billboard owner that chooses to settle with the Department is required, prior to the Special Commissioners' hearing, to agree upon a value for the impacted sign (ordinarily through a memorandum of agreement or similar exchange of correspondence) and quitclaim its interest in the subject sign to the State of Texas through a nonnegotiable, standard form quitclaim deed prepared and provided by the Department. TxDOT's standard memoranda of agreement typically include the following form language:

> It is important to confirm this agreement in order to avoid any possible misunderstanding as to the details of the purchase or the process by which the Texas Department of Transportation (TxDOT) will make payment. The payment of [the purchase price] as herein agreed will constitute full payment to be made by TxDOT for the property to be conveyed to the State. *The consideration recited herein represents a settlement and compromise by all parties as to the value of the property herein conveyed in order to avoid formal eminent domain proceeding and the added expense of litigation.*

(emphasis added). The memoranda go on to describe a sign owner's eligibility for an impacted sign credit:

> Under certain circumstances, Rule 21.192 of Title 43 of the Texas Administrative Code allows the owner of a billboard structure to apply for a relocation permit if it is legally erected and maintained and will be within the highway right of way as a result of a highway construction project.
>
> Executing a quitclaim deed and retaining the billboard structure does not guarantee that a relocation permit will be issued. In addition to executing the quitclaim deed and retaining the billboard structure, the owner of the billboard structure must follow and meet the current relocation permitting guidelines found in 43 TAC 21.192, et seq.
>
> The payment of the amount herein stated and the terms provided constitute the only promises, consideration and

> conditions of this purchase; and no other promises, consideration and conditions have been signified or implied, save and except the mutual benefits to be derived by you and TxDOT from the signing of this agreement.

The Department's standard form quitclaim deed provides that the billboard owner will remove the impacted sign after receiving a notice to vacate from the Department. By submitting to this process, a billboard owner waives its right to go through formal condemnation proceedings to obtain an award of just compensation for the loss of the billboard, and waives its right to recover any relocation assistance benefits for the cost to relocate the retained structure.

The State's settlement procedure for billboards displaced by highway projects is explained in a Department-issued policy titled, "Amended Guidance for Impacted Off-Premise Billboards Affected by Highway Transportation Projects" (the "Guidance"). The Guidance provides that a billboard owner that retains the structure through this settlement process will be eligible for an impacted sign credit under 43 Tex. Admin. Code § 21.192. The same procedure is likewise included in a Department-issued memorandum titled, "Impacted Commercial Signs: What to Expect When Your Sign is Impacted by a TxDOT Construction Project."

The Department's regulations applicable to the issuance of impacted sign credits are found in 43 Tex. Admin. Code §§ 21.192, .193, & .195. These sections provide sign owners the ability to relocate a billboard displaced by a highway project using certain relaxed relocation criteria. For example, a relocated sign need only be adjacent to one business, instead of the two businesses required for ordinary new-build signs. 43 Tex. Admin. Code § 21.193(c); cf. 43 Tex. Admin. Code § 21.179(a)(1). Additionally, the various spacing requirements for relocated signs are relaxed, as compared to the spacing requirements for new-build signs. 43 Tex. Admin. Code §21.193(b); cf. 43 Tex. Admin. Code § 21.187. Today, most of the available locations for the construction of new signs have been utilized. As such, a relocation permit that entitles the holder to relax the ordinary regulations for new-build signs is a valuable, private right, which is made all the more valuable due to TxDOT's required waiver of condemnation rights necessary for the sign owner to receive the TxDOT relocation permit.

After agreeing on a reduced value for an impacted sign (through the execution of a memorandum of agreement or exchange of correspondence with TxDOT) and signing a quitclaim deed, an impacted sign owner will receive a notice to vacate, which specifies the required removal date, and informs the sign owner of the following: "Failure to remove the retained improvements will also result in the loss of eligibility for a relocation permit for the outdoor advertising sign." After receiving the notice to vacate from the Department, a sign owner is required to remove a sign by the deadline included in the notice. The sign owner is then required to submit TxDOT's Impacted Sign Credit Application form in order to receive an impacted sign credit.

## The Parcel 23 Sign

The petition alleged that Primary Media owned a sign adjacent to IH-35 in Gainesville, Texas, which was located on property designated by the State as Parcel 23 and removed to accommodate a State road-widening project (the "Parcel 23 Sign"). The Parcel 23 Sign was permitted by the City of Gainesville, a "certified city" with the authority to control commercial signs in its jurisdiction. Under the Texas Administrative Code, a certified city has the authority to regulate billboards within its corporate limits, and billboard owners that receive a permit from a certified city to construct a billboard do not have to obtain a permit from TXDOT. 43 Tex. Admin. Code § 21.200. Once TXDOT gave Primary Media notice that the Parcel 23 Sign would have to be removed, Primary Media negotiated a settlement with TXDOT, signed a memorandum of agreement, executed a quitclaim deed, timely removed the sign, and documented the removal of the sign on TXDOT's Impacted Sign Credit Application.

–5–

After Primary Media removed the Parcel 23 Sign, it applied for and obtained a permit from the City of Gainesville to construct a sign on the remainder of the impacted property, asserting that the site remained conforming as a new build site. Because Gainesville is a certified city, Primary Media did not have to apply for a TXDOT permit or utilize a TXDOT impacted sign credit. Primary Media did apply for a permit to construct a sign near Caddo Mills, Texas. TXDOT rejected the application pursuant to 43 Texas Administrative Code section 21.192. In a letter, TXDOT stated the following:

> The application you submitted on December 30, 2020 was unable to be processed for the following reason(s). Based on the information provided by the City of Gainesville, the sign has already been relocated approximately thirty feet from where it was originally located. The purpose of the impacted sign credit is to provide an incentive to the sign owner when their sign is impacted by a highway construction project. In this case, the sign was able to move to a new location in accordance with the city of Gainesville ordinances. Therefore, the permit is not eligible for use in relocating an impacted sign and this application must be rejected.

Primary Media appealed, but TXDOT "summarily concluded that Primary Media was ineligible for receipt of an impacted sign credit because it was able to build a sign on the remainder of Parcel 23."

**The Parcel 48 Sign**

Primary Media owned a sign located near Forney, Texas, designated as the Parcel 48 Sign, and TXDOT required that Primary Media remove the sign in July 2021. Primary Media followed TXDOT-mandated procedure for the removal of impacted signs so that it could remain eligible for a relocation credit: Primary Media

–6–

settled with the State on the value of the structure through the execution of a standard form Quitclaim Deed, timely removed the impacted structure prior to the date included in TXDOT's Notice to Vacate and submitted all required documentation to the Department with an Impacted Sign Credit Application. On July 29, 2021, TXDOT notified Primary Media that its Impacted Sign Credit Application was rejected as follows:

> According to 43 TAC § 21.192(a), a commercial sign that has been timely removed from a department construction project may be relocated. The notice to vacate stated that the property was to be vacated on July 12, 2021. However, photos from July 22, 2021 provided by TXDOT staff showed that the sign was taken down, but the sign parts were still at the acquired property. The pipe is cut at ground level and capped, leaving pipe and footings intact.

**The Parcel 16 Sign**

Primary Media removed a sign located in Gainesville, Texas, adjacent to I-35, on property designated by TXDOT as Parcel 16 (the "Parcel 16 Sign") in order to accommodate TXDOT's highway improvements. Primary Media executed a Quitclaim Deed, timely removed the Parcel 16 Sign in response to TXDOT's Notice to Vacate, and properly documented the removal. Similar to the Parcel 23 Sign, Primary Media was able to construct a new sign on the remainder of Parcel 16 because the property remained a conforming location under Gainesville's sign regulations. Primary Media properly submitted an Impacted Sign Credit Application for the Parcel 16 Sign on August 12, 2021. On August 23, 2021, TXDOT sent a letter to Primary Media in which TXDOT rejected the Application for reasons

–7–

similar to those stated in the TXDOT's letters rejecting Primary Media's Impacted Sign Credit Applications for Parcels 23 and 48.

**The Parcel 60 Sign**

Primary Media removed a sign located in Royse City, Texas, adjacent to I-30, on property designated by the State as Parcel 60 (the "Parcel 60 Sign") in order to accommodate the State's highway improvements. Primary Media executed a Quitclaim Deed, timely removed the Parcel 60 Sign in response to TXDOT's Notice to Vacate, and properly documented the removal. On September 13, 2021, TXDOT mailed Primary Media a letter, in which TXDOT informed Primary Media that its Impacted Sign Credit Application was rejected. In its letter, TXDOT explained:

> The notice to vacate stated that the property was to be vacated on May 5th, 2021, with an extension granted until August 31st, 2021. However, photos provided by Primary Media staff showed that the sign was taken down, but the sign parts were still at the acquired property. The pipe is cut at ground level and capped, leaving pipe and footings intact. Therefore, the sign is not eligible for an impacted sign credit.

**Primary Media's Breach of Contract Claim**

Based on its rendition of the facts, Primary Media asserted claims of breach of contract in connection with each of the signs. Generally, Primary Media claimed it settled with TXDOT by executing quitclaim deeds in lieu of exercising its rights to just compensation in eminent domain. Primary Media claimed the quitclaim deeds required Primary Media to remove and retain the subject structures in order to

retain eligibility for relocation permits[1] and that, in exchange for its compliance with the deeds' removal requirements, Primary Media was entitled[2] to the issuance of relocation permits. In compliance with the terms of the deeds and Department regulations, Primary Media asserts it timely removed the subject signs, incurred the expense of such removal efforts, agreed to a one-percent reduction in compensation for the subject signs, and submitted all TXDOT-mandated paperwork. Thus, avers Primary Media, TXDOT breached its obligation to issue Primary Media the requested relocation permits upon the timely removal of the subject signs.

Specifically, Primary Media claimed TXDOT breached its obligation owed to Primary Media under the quitclaim deed for the Parcel 23 Sign when it rejected Primary Media's impacted sign credit application, and Primary Media did not waive its right to an impacted sign credit. As to the Parcel 48 Sign, Primary Media asserted that TXDOT breached its obligations under the quitclaim deed when it rejected Primary Media's impacted sign credit application because TXDOT regulations do not require the removal of the subsurface components of an impacted sign structure but only the removal of the "sign" itself. Primary Media complained TXDOT breached its obligations under the applicable quitclaim deeds when it rejected

---

[1] We note that the quitclaim deeds actually make no reference to relocation permits; they only refer to Primary Media's removal and retention of the signs.

[2] Primary Media's contention that it was "entitled" to relocation permits would become a central issue in the case, both in the trial court and on appeal. Again, however, the quitclaim deeds do not mention relocation or relocation permits or contain the word "entitled" or its variants.

Primary Media's impacted sign credit applications in connection with the Parcel 16 Sign and Parcel 60 Sign "for the same reasons."

## TXDOT'S PLEA TO THE JURISDICTION, SPECIAL EXCEPTIONS, GENERAL DENIAL, AND AFIRMATIVE DEFENSES

In October 2021, TXDOT filed a responsive pleading asserting that the trial court lacked jurisdiction over Primary Media's suit because TXDOT's sovereign immunity had not been waived. TXDOT also specially excepted to Primary Media's petition because it did not allege a valid waiver of sovereign immunity or Primary Media's obtaining legislative consent to file suit against TXDOT. Finally, TXDOT generally denied Primary Media's allegations and, as an affirmative defense, asserted it was immune from suit and liability under the theory of sovereign immunity.

## TXDOT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

In May 2022, TXDOT filed its motion to dismiss for lack of jurisdiction. As the factual background for its motion, TXDOT alleged Primary Media executed a quitclaim deed for each of the subject properties. In the deeds, the parties agreed that Primary Media could remove and retain possession of and title to the commercial sign structures located on the properties if they were removed from the described tracts of land by the dates set forth in notices to vacate. In consideration for the quitclaim deeds, Primary Media was paid $218,252 for the deed to Parcel 16, $89,400 for the deed to Parcel 23, $82,569 for the deed to Parcel 48, and $110,150

for the deed to Parcel 60. TXDOT correctly reflects the record that the quitclaim deeds did not make any promises concerning relocation permits and did not even mention relocation or relocation permits. According to TXDOT, Primary Media's impacted sign credit applications were denied either because the signs had already been relocated in accordance with municipal ordinances pursuant to 43 Texas Administrative Code section 21.195 or because all sign parts were not timely removed. TXDOT argued it did not waive immunity from suit by contracting with a private party, citing *Texas Natural Resource Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 854, 858 (Tex. 2002). TXDOT asserted Primary Media could not raise a material issue of fact regarding the existence of promises to issue relocation permits that may have been violated because the quitclaim deeds do not contain such promises. Accordingly, TXDOT argued, Primary Media had not raised a material fact issue as to whether contracts were breached, sovereign immunity was not waived, and Primary Media's claims should have been dismissed for want of jurisdiction.

**THE TRIAL COURT'S ORDER**

On November 2, 2022, the trial court signed an order denying TXDOT's motion to dismiss for lack of jurisdiction. The order provided in its entirety:

> In considering the [TXDOT']s Motion to Dismiss for Lack of Jurisdiction, the Court has reviewed the motion, response, all supplements of each, other evidence on file, and the pleadings. The Parties stipulated that all the signs in [Primary Media's] Petition are from settlements in lieu of condemnation proceedings.

–11–

[TXDOT] takes the position that there is no agreement or guarantee because the parties' signed agreement states "Executing a quitclaim deed and retaining the billboard structure does not guarantee that a relocation permit will be issued." However, the very next sentence states "In addition to executing the quitclaim deed and retaining the billboard structure, the owner must follow and meet the current relocation permitting guidelines found in 43 TAC 21.192, et seq." The signed agreement also provides for reasons the Plaintiff would not be eligible for a relocation permit.

[TXDOT] also claims there could never be a breach of contract claim based on the failure to issue a relocation permit because issuance of a permit is a governmental function, not a contract. Yet [TXDOT's] Amended Guidance for Impacted Off-Premise Billboards Affected by Highway Transportation Projects dated June 9, 2016, provides procedures to be followed with specific reference to language in the deed, which, is derived from the agreement reached in lieu of condemnation.

Further, [TXDOT's] rejection letters lay out provisions in the agreements and/or deeds that allegedly were not complied with by [Primary Media].

The Court finds that [TXDOT's] Motion to Dismiss for Lack of Jurisdiction is hereby DENIED.

This appeal followed.

## ANALYSIS

In a single issue, TXDOT argues that, because Primary Media failed to establish a waiver of sovereign immunity, the trial court should have dismissed the case for want of jurisdiction.

## Standard of Review

We review an order denying a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *City of McKinney*

–12–

*v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 109 (Tex. App.—Dallas 2013, no pet.). A plea to the jurisdiction can challenge the sufficiency of the claimant's pleadings or the existence of necessary jurisdictional facts. *Miranda*, 133 S.W.3d at 226–28; *Hank's Rest. Grp.*, 412 S.W.3d at 109. Here, TXDOT asserted that Primary Media failed to demonstrate that the allegations in its petition fell within the trial court's jurisdiction. As the claimant, Primary Media bears the burden of pleading facts that affirmatively demonstrate that governmental immunity has been waived and that the court has subject-matter jurisdiction. *Hank's Rest. Grp.*, 412 S.W.3d at 109; *see City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.—Dallas 2010, pet. denied). We construe the pleadings in the claimant's favor and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain enough facts to demonstrate the propriety of jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the claimant should be afforded the opportunity to amend. *Id.* at 226–27. This opportunity shall be given after a court determines that the pleadings are insufficient. *Lazarides v. Farris*, 367 S.W.3d 788, 803–04 (Tex. App.—Houston [14th Dist.] 2012, no pet.). But if the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without giving the claimant an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

Governmental immunity is a common-law doctrine. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011). It applies to political subdivisions of the State, while the immunity of the State itself is referred to as sovereign immunity. *Id.* at

–13–

372 n.2. "When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (footnote omitted). Governmental immunity comprises both immunity from liability and immunity from suit. *Albert*, 354 S.W.3d at 373. "Immunity from liability protects entities from judgment while immunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented . . . ." *Id.* Thus, the legislature can waive a political subdivision's governmental immunity. *See id.* at 374 ("[W]aivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature.").

Governmental immunity is not unlimited. Generally, a claim falls within the scope of governmental immunity if the claimant seeks either to control government action or to subject the governmental entity to liability. *Hank's Rest. Grp.*, 412 S.W.3d at 111. But "a governmental entity does not have immunity from suit for monetary claims against it that are 'germane to, connected with, and properly defensive to' affirmative claims made by the entity, to the extent the claims against the entity offset the entity's claims." *Albert*, 354 S.W.3d at 372 (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 378 (Tex. 2006)). Also, "suits for injunctive relief may be maintained against governmental entities to remedy violations of the Texas Constitution." *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam) (internal quotation and citation omitted). Nevertheless, the

State does not waive immunity from suit simply by contracting with a private party. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002).

Without specific identification of promissory language in the record, Primary Media has argued TXDOT promised that Primary Media was entitled to relocation permits under the terms of the quitclaim deeds. However, none of the quitclaim deeds or other documents contain such a promise. The quitclaim deeds themselves made no mention of relocation permits. The initial offer letters with respect to each property set forth procedures for applying for relocation permits but expressly stated that "[e]xecuting the quitclaim deed and retaining the billboard structure does not guarantee that you will get a relocation permit." The final offer letters related to parcels 48 and 60 stated that, "[a]s outlined in the State's initial offer letter," Primary Media would be *eligible* for a relocation permit only if it quitclaimed its billboard structure to the State, retained that structure, and then applied for a relocation permit. Memoranda of agreement related to parcels 16 and 23 provided, in keeping with the initial offer letters, that executing a quitclaim deed and retaining the billboard structure "does not guarantee that a relocation permit will be issued." A November 2020 Rule 11 agreement between the State and Primary Media regarding a settlement in lieu of condemnation on parcels "60/60E and 61" stated that Primary Media "maintains its eligibility for relocation permits under Texas Department of Transportation's regulations" provided that Primary Media remained in compliance with all other provisions of the agreement and TXDOT regulations. The notices to

vacate associated with each parcel provided that the failure to remove the retained improvements would result in "the loss of eligibility for a relocation permit for the outdoor advertising sign."

In its response to TXDOT's motion to dismiss, Primary Media asserted that, if it had not settled with TXDOT and executed the quitclaim deeds and other agreements, it would have been entitled to adequate compensation in eminent domain. Primary Media quoted *Trant v. Brazos Valley Solid Waste Management Agency, Inc.*, 478 S.W.3d 53, 62 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) for the proposition that "[w]hen a governmental entity is exposed to suit—such as through a claim seeking compensation for a governmental taking—because of a waiver or lack of immunity, it cannot nullify that waiver or lack of immunity by settling the claim with an agreement on which it cannot be sued." *See also Texas A & M Univ.–Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex. 2002). Primary Media argued that "[a]n agreement to convey property to a governmental authority for a public purpose has the same effect as a formal condemnation proceeding," quoting *City of Carrollton v. Singer*, 232 S.W.3d 790, 798 (Tex. App.—Fort Worth 2007, pet. denied). Based on these authorities, Primary Media asserted that courts have held on several occasions that governmental entities are not entitled to immunity from suit in actions for breach of settlement agreements reached in lieu of eminent domain proceedings. *See id.* at 800.

*Trant* is instructive to our analysis. In *Trant*, the Trants entered into an option contract with the cities of Bryan and College Station, pursuant to which the cities obtained the right to purchase approximately 382 acres of land in Grimes County from the Trants. *Trant*, 478 S.W.3d at 56. The option contract stated: "[the cities] contemplate using the Property as a . . . Landfill." *Id.* The cities subsequently purchased the property, and the parties executed a general warranty deed, which incorporated the "Terms, Conditions, and Representations" in the option contract. *Id.* at 56–57. The cities and the Trants also signed an easement agreement for access granting the Trants non-exclusive access to their land adjacent to the property. *Id.* at 57.

The cities formed the agency, a governmental entity that operated a landfill on the property. *Id.* In 2014, the Trants learned that the cities had decided to put a firing range on a portion of the property near their land. *Id.* The Trants sent a letter to the cities and the agency, contending that the property could be used only as a landfill. *Id.* Counsel for the agency responded by letter that while the option contract contemplated an intended use of the property as a landfill, the contract did not restrict the cities' use of the property to such purpose. *Id.*

The Trants filed suit against the agency, bringing claims including a breach of contract claim. *Id.* The agency filed a plea to the jurisdiction, asking the trial court to dismiss the suit on the basis that governmental immunity barred the Trants'

claims. *Id.* The Trants argued that the general warranty deed included a restrictive use covenant allowing the land to be used only as a landfill. *Id.* at 60.

The *Trant* court determined the Trants failed to raise a material issue of fact as to the agency's violation of a restrictive use covenant in the general warranty deed or option contract because those documents did not include a restrictive use covenant providing that the cities agreed to use the property as a landfill, only language reflecting how the cities *anticipated* using the property. *Id.* (emphasis in original). The court addressed the Trants' argument that the purported unauthorized use of the easement and the property for purposes other than as a landfill constituted an unconstitutional taking of the property and rejected this argument because the agency was not required to use the property as a landfill. *Id.* at 61–62.

The court next addressed the Trants' contention that their sale of land to the cities was tantamount to a formal condemnation proceeding that was settled by the Trants' agreement to sell the property, the purpose of their lawsuit was to enforce the parties' settlement agreement, and the agency was not immune from such suits. *Id.* at 62. The *Trant* court stated that, when a governmental entity is exposed to suit—such as through a claim seeking compensation for a governmental taking—because of a waiver or lack of immunity, it cannot nullify that waiver or lack of immunity by settling the claim with an agreement on which it cannot be sued. *Id.* (citing *Lawson*, 87 S.W.3d at 521). To illustrate, the court went on to state that the Fort Worth Court of Appeals held that a city did not have governmental immunity

for a breach of contract claim involving the breach of an agreement in settlement of a condemnation claim because the governmental entity would not have had immunity from the underlying takings claim. *Id.* (citing *Singer*, 232 S.W.3d at 799–800). The court noted that, in holding that the City was not immune from suit, the *Singer* court observed in the absence of the settlement agreement, "the [plaintiffs] would have [had] a claim against the City for adequate compensation for the City's [taking] of their property . . . for which the City would not be immune." *Id.* at 62–63 (citing *Singer*, 232 S.W.3d at 800). Ultimately, the *Trant* court concluded it need not decide whether the Option Contract was, as alleged by the Trants, a settlement of a condemnation claim because the Trants had not raised a material issue of fact regarding whether the contract was breached. *Id.* at 63.

The *Trant* court observed that the Trants alleged only that "the Option Contract specifically limited the taking of each tract of property for 'the construction, operation, and maintenance of a solid waste facility and landfill'" and "[s]ince all takings and transfer set forth herein were made pursuant to condemnation or the threat of condemnation, [the agency] has waived its right to sovereign or governmental immunity." *Id.* As the court had already explained, the contract contained no such limitation. *Id.* Accordingly, the Trants did not allege an unconstitutional taking for which the agency would not be immune as a basis for the trial court's jurisdiction. *Id.* (citing *Singer*, 232 S.W.3d at 800); *see also Kaufman Cnty. v. Combs*, 393 S.W.3d 336, 345 (Tex. App.—Dallas 2012, pet. denied)

–19–

("Although governmental immunity does not shield a governmental entity from a valid takings claim, it does apply when a plaintiff does not allege a valid takings claim."). Because the court concluded the agency was immune from suit under the circumstances of that case, the court affirmed the trial court's judgment granting the agency's plea to the jurisdiction and dismissing the case for want of jurisdiction. *Id.* at 65.

Similarly, here the quitclaim deeds did not mention relocation or relocation permits, and the other documents associated with the State's acquisition of the four parcels acknowledged the possibility of Primary Media obtaining relocation permits but either expressly stated TXDOT did not guarantee that Primary Media would get a relocation permit or merely indicated that Primary Media would be *eligible* for a relocation permit under certain circumstances. Because none of the deeds or other documents indicate that TXDOT was contractually obligated to issue Primary Media relocation permits, we conclude Primary Media has not raised a material issue of fact regarding whether the contracts were breached[3] and we need not, therefore, decide whether the quitclaim deeds and other documents constituted a settlement of a condemnation claim. *See id.* at 63. Accordingly, Primary Media did not allege an unconstitutional taking for which the agency would not be immune as a basis for the

---

[3] To the extent Primary Media relies on representations made by "TXDOT's agent" to show that the parties agreement included an agreement that Primary Media would be allowed to relocate its signs, we reject this argument. The parol evidence rule bars consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019).

trial court's jurisdiction. *See id.* Thus, on this record, we conclude the trial court erred in denying TXDOT's motion to dismiss for lack of jurisdiction.

To the extent Primary Media complains of TXDOT's application of its regulations concerning relocation permits to the parcels at issue, again, on this record, the trial court similarly lacked jurisdiction over those claims as well. *See Lamar Advantage Outdoor Co., L.P. v. Texas Dep't of Transportation*, No. 14-20-00362-CV, 2022 WL 1498213, at *9 (Tex. App.—Houston [14th Dist.] May 12, 2022, no pet.) (mem. op.) (Government Code Section 2001.0038 does not confer jurisdiction over the courts to determine whether an agency has complied with a rule or how a rule should be applied) (citing *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 124–25 (Tex. App.—Austin 2017, pet. denied)). We sustain TXDOT's single issue.

We reverse the trial court's judgment and render judgment dismissing Primary Media's claims for want of jurisdiction.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
221273F.P05                                JUSTICE

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TEXAS DEPARTMENT OF
TRANSPORTATION, Appellant

No. 05-22-01273-CV        V.

PRIMARY MEDIA GROUP, INC.,
Appellee

On Appeal from the 439th Judicial
District Court, Rockwall County,
Texas
Trial Court Cause No. 1-21-1352.
Opinion delivered by Justice
Goldstein. Justices Garcia and Miskel
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

Primary Media Group, Inc.'s claims are **DISMISSED** for lack of jurisdiction.

It is **ORDERED** that appellant TEXAS DEPARTMENT OF TRANSPORTATION recover its costs of this appeal from appellee PRIMARY MEDIA GROUP, INC.

Judgment entered August 13, 2024.